# FOLEY GRIFFIN

## Attorneys at Law

Thomas J. Foley
Brian J. Griffin
Daniel W. Russo
..........................
Kelly A. Guthy
Chris McDonough, Special Counsel

666 Old Country Road, Suite 305

Garden City, New York 11530

Phone: (516) 741-1110

www.foleygriffin.com

Suffolk County Office
33 Main Street
Southampton, New York 11968
(631) 506-8170

May 4, 2021

Honorable Paul G. Gardephe
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   ***United States v. Finkelstein*, 19-Mag-10645, 20-Cr-__ (PGG)**
      **In response to the Court's Order In Advance of *Curcio* Hearing**

Dear Judge Gardephe:

This letter is respectfully submitted in response to the Court's Order filed on March 2, 2020 (Dkt. #10) and sets forth the defense's position with respect to the *Curcio* concerns identified in that Order. The undersigned respectfully takes the position that during pre-trial representation there is no conflict to the representation, nor am I a witness to the criminal conduct alleged in Count Four. In brief, during the civil representation, I simply put forth my client's defense with third party documents in the same manner that I would defend him against criminal allegations, with the use of documents (e.g., discovery) that support his position. Alternatively, based on the research outlined below, undersigned counsel believes any potential conflict is waivable certainly during pre-trial proceedings and based upon the Government's position, at trial. To the extent the Court believes a hearing is necessary, counsel asks the Court to hold that hearing before any further proceedings in the case.

Since the Court's Order of March 2, 2020, the parties have continued to engage in extended plea negotiations and the government has extended a plea offer. Although when this *Curcio* issue first arose it appeared Mr. Finkelstein would resolve the matter, it now appears this will not occur. As is his absolute right, Mr. Finkelstein has rejected a plea and wishes to proceed to trial. The undersigned submits that even if a trial were to occur, the potential conflict in question can be waived.

## FACTUAL BACKGROUND OF THE REPRESENTATION

The undersigned was retained by Mr. Finkelstein to represent him in the civil context after February 14, 2019, publication of a *New York Post* article indicating that he had filed federal lawsuits alleging violations of the Americans with Disabilities Act ("ADA") on behalf of an individual named Jose Figueroa without Mr. Figueroa's permission and consent. Mr. Figueroa had been a 20-year client of Mr. Finkelstein until the two had a falling out unrelated to the conduct alleged in the *Post* article.

Following publication of the article, several attorneys who had settled cases with Mr. Finkelstein began requesting hearings in this Court to undo those settlements. My retainer covered representation of Mr. Finkelstein in the civil context. During the course of my representation, one of the attorneys who had requested a hearing indicated that he would prefer to settle the matter. In furtherance of settlement, I provided that attorney with phone records and bank records supporting Mr. Finkelstein's position. All of the records had been provided to me by Mr. Finkelstein and I had no reason to believe they were anything other than true copies of the original records maintained by the relevant institutions. The case was settled.

In the wake of that settlement, six months later, the Government brought this prosecution, charging Mr. Finkelstein with the same conduct alleged in the civil arena, under the same theory of wrongdoing. The Government now asserts that, in addition to the ADA lawsuit-related conduct, Mr. Finkelstein obstructed justice by providing the bank and phone records that the undersigned sent to opposing counsel in the course of the civil settlement negotiations. The Government further takes the position that because I physically sent these materials, I am now a potential trial witness to the alleged obstructive conduct.

In light of the Government's assertion that my action on behalf of his client in the civil context raises concern of a conflict of interest, albeit a waivable one (see Government letter dated Feb. 11, 2020 [Dkt. #__ ] at p. 4), the Court has directed the parties to:

> ... cite law demonstrating that – for purposes of waiver of indictment, arraignment, guilty plea, and sentencing – it is appropriate for this Court to permit the Defendant to waive the conflict. To the extent that the parties believe that the conflict can be waived for <u>pretrial</u> purposes – as the Government urges in its February 11, 2020 letter – they are to submit supporting authority. Similarly, to the extent that the parties believe that the Defendant can waive indictment and be arraigned prior to the completion of the <u>Curcio</u> hearing, they are to submit supporting authority.

Order (Dkt. #10) at pp. 1-2. This letter is respectfully submitted in response to the Court's direction.

## DISCUSSION

The defense adopts as accurate the general principals of Sixth Amendment right to counsel and conflict of interest law as stated in the Government's letter to the Court dated February 11, 2020, at pages 3-4.

### I.     Pre-trial- There Is No Conflict to the Representation.

Recognizing that the Court's Order of March 2, 2020, implies that the Court has concluded a conflict exists, the defense respectfully urges the Court to reconsider that conclusion based on the principals of law set forth below.

Rule 3.7(a) of the New York Rules of Professional Conduct[1] ("Lawyer As Witness") provides in relevant part that, "A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless: (1) the testimony relates solely to an uncontested issue; . . ."

Rules 3.7(b)(2) and 1.7(a) ("Conflict of Interest: Current Clients") further prohibit a lawyer from acting as an advocate before a tribunal "if a reasonable lawyer would conclude that . . . (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." N.Y.R.P.C. 1.7(a).

Expanding on these Rules, case law instructs that an attorney is not disqualified from the representation of a client merely because he is a potential Government witness. In *United States v. Perez*, 325 F.3d 115 (2d Cir. 2003), the Second Circuit rejected the Government's "contention that [the defense attorney] had an unwaivable conflict of interest because he was a potential witness for the government at trial," after it became evident that the fact to which he might be called to testify was "undisputed and was to be stipulated." *Perez*, 325 F.3d at 128.[2] Moreover, to the extent counsel has any firsthand knowledge of events in issue at trial, disqualification is limited to those cases in which "an attorney will likely become an unsworn witness on a material issue of fact at trial." *See, e.g., United States v. Orgad*, 132 F. Supp. 2d 107, 124 (E.D.N.Y. 2001) (collecting cases).

The fact as to which the Government has posited that it might call undersigned counsel as a witness—the delivery of documents to opposing counsel in a related civil suit for purposes of settlement negotiations—is an insignificant issue of fact and an insufficient (i.e., immaterial) factual basis to conclude that a conflict exists in this criminal representation.

---

[1] Available at https://www.nycourts.gov/LegacyPDFS/rules/jointappellate/NY-Rules-Prof-Conduct-1200.pdf
[2] [Additionally, Perez' client submitted an affidavit rebutting the additional fact to which the Government had wanted the attorney to testify.]

Further, providing documents to opposing counsel in the civil case, this fact does not lead to the conclusion that counsel has any firsthand knowledge about the contents of those documents or of the underlying relationship between Mr. Finkelstein and Mr. Figueroa (indeed, the Government has indicated that it believes the documents themselves to have been authentic [Gov't. ltr. dated Feb. 11, 2020 at p. 2]). Under these circumstances, there is no danger that counsel would become an unsworn witness to any facts as to which testimony might properly be elicited at trial. *See United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993) (citation omitted) ("An attorney acts as an unsworn witness when his relationship to his client results in his having first-hand knowledge of the events presented at trial. If the attorney is in a position to be a witness, ethical codes may require him to withdraw his representation."); *United States v. McKeon*, 738 F.2d 26, 34–35 (2d Cir.1984) (requiring disqualification where attorney would be essentially acting as both an advocate and a witness); *United States v. Cunningham*, 672 F.2d 1064, 1075 (2d Cir.1982) (upholding disqualification where an attorney would act as an unsworn witness for defendant).

The undersigned respectfully submits that the providing of documents alone is an immaterial fact and that no further relevant or admissible testimony on this point would be properly elicited by calling counsel to the stand. Rule 3.7(a) does not, under these circumstances, require disqualification. *See, e.g., United States v. Orgad*, 132 F. Supp. 2d 107, 124 (E.D.N.Y. 2001) ("courts may find that an actual, non-waivable conflict exists when an attorney will likely become an unsworn witness on a **material** issue of fact at trial.") (citations omitted) (emphasis supplied); N.Y.R.P.C. 3.7(a)(1) (disqualification not required where "testimony relates solely to an uncontested issue").

Any testimony about the conversations between counsel and Mr. Finkelstein leading to the disclosure of the documents would, of course, be protected by the attorney-client privilege, which is not called into question here due to the Government's having confirmed that counsel has no criminal exposure in the matter and is not, therefore, privy to the commission of a crime. *Cf. United States v. Cain*, 671 F.3d 271 (2d Cir. 2012) (attorney disqualified where Government had subpoenaed attorney to testify in the Grand Jury under the crime-fraud exception to the attorney-client privilege rule and no stipulation could be reached).

Further, because the Government has affirmed that counsel faces no criminal exposure, there is no risk under 1.7(a)(2) that counsel's representation would be adversely affected in any way "by the lawyer's own financial, business, property or other personal interests."

For these reasons, no pre-trial conflict exists, and no waiver is required.

## II.     Trial- Any Potential Conflict Is Waivable.

The undersigned submits that the conflict issue changes if the matter proceeds to trial. Although the parties have engaged in extended plea negotiations and the government has extended a plea

offer, Mr, Finkelstein, as is his absolute right has rejected a plea and wishes to proceed to trial. It is the defenses position that even at a trial, if a conflict exists, it can be waived.

In this Circuit, there are very few circumstances in which a conflict cannot be waived. Under the Sixth Amendment to the United States Constitution, a defendant in a criminal case is entitled to the assistance of competent counsel. *See Wheat v. United States,* 486 U.S. 153, 158, 108 S. Ct. 1692, 1697, 100 L.Ed.2d 140 (1988). There is a "presumption in favor of [representation by a defendant's] counsel of choice." *United States v. Jones,* 381 F.3d 114, 119 (2d Cir. 2004).

When a court becomes aware of even the possibility of a conflict of interest, this Circuit instructs that a two-step inquiry should unfold. *United States v. Levy,* 25 F.3d 146, 153 (2d Cir. 1994):

> First, there is an obligation to inquire and "investigate the fact and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, potential conflict, or no genuine conflict at all." [*Levy*, 25 F.3d at 153]. An actual conflict "exists when the attorney's and the defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action,' or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." [*United States v.*] *Jones*, 381 F.3d [114], at 119 [(2d Cir. 2004)] (citation omitted). A potential conflict exists if the defendant's interests "*could* place the attorney under inconsistent duties in the future." *Id.* (emphasis in original).
>
> If the court determines that there is an actual or potential conflict, it moves to the second step, which requires consideration of whether the conflict is automatically disqualifying or waivable. *Levy,* 25 F.3d at 153. The Second Circuit has clarified that there is a "very narrow category of cases in which we have held attorney conflicts to be unwaivable." *United States v. Perez,* 325 F.3d 115, 126 (2d Cir. 2003). Indeed, the Circuit has warned trial courts to avoid assuming "too paternalistic an attitude in protecting the defendant from himself." *Id.* (quoting *United States v. Curcio,* 694 F.2d 14, 25 (2d Cir. 1982)).

*United States v. Vertuccio*, No. 15-CR-174 (ENV), 2017 WL 6513676, at *2 (E.D.N.Y. Dec. 19, 2017).

As the district court concluded in *Vertuccio*, "this line of authority suggests that there are only two instances where attorney conflicts are not waivable: (1) when the subject attorney faces or potentially faces criminal liability arising out of the same criminal conduct as the defendant seeking his services, and (2) when the subject attorney's financial interests diverge from those of the defendant." *Vertuccio*, 2017 WL 6513676 at *2 (referencing *Perez*, 325 F.3d at 126).

Neither of those circumstances is present here. Therefore, the conflict identified by the Government is, at best potential, and may be waivable.

### III. The Court Should Hold the *Curcio* Hearing Before Trial

The Second Circuit instructs that a *Curcio* hearing should be held when the district court is first alerted to the potential conflict of interest. *See United States v. Cordero*, No. 3:17-CR-150 (VAB), 2018 WL 4501206, at *2 (D. Conn. Sept. 19, 2018) (quoting *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994)) ("A district court in the Second Circuit has an obligation first, when alerted to a potential conflict of interest, to 'investigate the facts and details of the attorney's interest to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict.'"). Case law supports holding the hearing "when [the district court] 'knows or reasonably should know that a particular conflict exists.'" *Amato v. United States*, No. 03-CR-1382-13 (NGG), 2017 WL 1293801, at *13 (E.D.N.Y. Apr. 6, 2017), *aff'd,* 763 F. App'x 21 (2d Cir. 2019) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980)).

To the extent the Court determines that the facts merit a hearing to discuss whether or not the conflict identified by the Government represents even a potential conflict, undersigned counsel asks the Court to hold the hearing before any further proceedings in the case occur.

### CONCLUSION

Wherefore, the defense respectfully submits that although no *Curcio* hearing is necessary at the pre-trial stage because no conflict—even potential—exists, as this case will proceed to trial, the defense asks the Court to hold the *Curcio* hearing before further substantive proceedings occur.

Thank you in advance for your consideration.

Respectfully submitted,

Brian J. Griffin, Esq.