

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 4, 2021

**BY ECF**
Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

      **Re:**    *United States v. Stuart Finkelstein*, **21 Cr. 217 (PGG)**

Dear Judge Gardephe:

      In connection with the pretrial conference and *Curcio* proceeding scheduled for May 11, 2021, the Government respectfully submits this letter to advise the Court of facts that may bear on the ability of Brian Griffin, Esq., to represent defendant Stuart Finkelstein in this case. As set forth in greater detail below, Mr. Griffin has a potential conflict of interest in that he has personal knowledge of facts relating to the charges in the above-referenced Indictment and may therefore become a sworn or unsworn witness at trial.[1]

      In light of these issues, the Government respectfully requests that the Court conduct an inquiry to determine whether Mr. Griffin's potential role as a sworn or unsworn witness at trial requires that he be disqualified from representing the defendant. In the event that the Court determines that disqualification is not required, the Government submits that the Court should then conduct a hearing pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation.

**I. Relevant Background**

      On or about March 31, 2021, a Grand Jury sitting in this District returned an Indictment charging the defendant with mail fraud, aggravated identity theft, false declarations before a court, and obstruction of justice. (Dkt. 35). These charges stem from the Government's allegations that the defendant stole the identities of two individuals in order to file fraudulent lawsuits pursuant to the Americans with Disabilities Act (the "ADA") in the United States District Courts for the Southern District of Florida and the Southern District of New York.

      Count Three of the Indictment charges the defendant with obstruction of justice. In approximately early 2019, a newspaper wrote an article about the defendant, claiming that he was

---

[1] As set forth below, the term "unsworn witness" refers to a participant in a proceeding, such as an attorney, who has first-hand knowledge of the events presented at trial and, although not called as a witness, may nevertheless seek to relay a personal recollection of the events at issue to the jury.

1

filing fraudulent lawsuits pursuant to the ADA on behalf of an individual ("Victim-2").[2] Around this time, the Government understands that the defendant retained Mr. Griffin to represent him in response to allegations that the defendant had filed fraudulent lawsuits. Some of these allegations were made directly in the civil lawsuits that the defendant had filed purportedly on behalf of Victim-2.

In approximately February 2019, one of the restaurants ("Restaurant-2") the defendant sued requested court intervention to determine whether the defendant's previously-settled lawsuit against Restaurant-2 was fraudulent. In response to that request, the court ordered the defendant to appear in person, along with Victim-2, for a hearing scheduled on May 1, 2019. Rather than appear for that hearing, the defendant, through Mr. Griffin, informed an attorney for Restaurant-2 ("Attorney-3") that he would give back some of the settlement money from the lawsuit if Restaurant-2 withdrew its request for a hearing. In addition, at some point prior to April 30, 2019, Mr. Griffin provided certain documents, including phone records, bank records, and a photograph (the "Documents"), to Attorney-3, which purported to establish that the Restaurant-2 lawsuit was authorized by Victim-2. Apart from these actions, to the Government's understanding, Mr. Griffin had no other role in the conduct that the defendant is charged with in the Indictment in this matter.

For the avoidance of any doubt, the Government does not believe that Mr. Griffin has criminal exposure in this matter. The heart of the obstructive conduct charged in Count Three is the defendant's offer to Restaurant-2, made through Mr. Griffin, to pay back settlement funds so that Restaurant-2 would retract its request for a hearing that would have likely exposed the defendant's fraud. With respect to the Documents, the Government does not contend that they were falsified. Rather, the Government's view is that the inference urged by the defendant on the basis of those Documents—that Victim-2 authorized the lawsuits—is not true.

## II. Applicable Law

District courts have two separate obligations where counsel has a possible conflict of interest. First, the district court has an "inquiry obligation" when it is apprised of the possibility of a conflict of interest, under which it must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994); *see Armienti v. United States*, 313 F.3d 807, 810 (2d Cir. 2002). If, after inquiry, "the court discovers no genuine conflict, it has no further obligation." *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003). But if the district court finds after some inquiry that the defendant's attorney suffers from an actual or potential conflict, the district court then has a second, "disqualification/waiver" obligation, under which it is required either to disqualify the attorney if the conflict is sufficiently severe, or, if the conflict may be waived, to conduct a *Curcio* proceeding to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict from the defendant.

In the Second Circuit, *per se* conflicts have been found only in two classes of cases, and the Circuit has repeatedly refused to expand the rule beyond those categories: where trial counsel

---

[2] For ease of reference, this letter uses the same terms to refer to individuals as those used in the underlying Complaint (ECF No. 1) and Indictment.

"is not authorized to practice law" and where trial counsel "is implicated in the very crime for which his or her client is on trial." *Armienti*, 313 F.3d at 823. An actual conflict is one that is so "severe" that "no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation . . . ." *Levy*, 25 F.3d at 153 (citing *United States v. Fulton*, 5 F.3d 605, 612-14 (2d Cir. 1993)). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (internal quotation marks and citations omitted). Where a conflict of interest is actual, a court is "obliged" to disqualify the attorney. *Levy*, 25 F.3d at 153. A potential conflict of interest, by contrast, is a "lesser" conflict. *Id.* A potential conflict exists where a court finds that "a rational defendant could knowingly and intelligently desire the conflicted lawyer's representation . . . ." *Id.* If "the court determines that the attorney suffers from a lesser [actual] or only a potential conflict, then it may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice." *Perez*, 325 F.3d at 125.

Disqualification may be required where an attorney is in fact, or is in a position to become, either a sworn or unsworn witness at trial. *See, e.g.*, *United States v. Kliti*, 156 F.3d 150, 156 (2d Cir. 1998)) ("When faced with an attorney as a sworn or unsworn witness, the proper recourse is to disqualify the attorney, not to exclude the testimony."). An attorney who is actually called as a witness at trial should generally be disqualified because, *inter alia*, ethical codes otherwise generally require the attorney to withdraw his or her representation. *See id*. at 156, n.8 (*citing* Model Code of Professional Responsibility DR 5-102(A)); *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993) (same); New York Rules of Professional Conduct, Rule 3.7 ("Lawyer as Witness"). A district court may properly disqualify an attorney where the Government represents that it is merely possible that the attorney will be a witness at trial. *See Jones*, 381 F.3d at 121 ("The risk that [the attorney] would become a witness at trial was enough alone to allow the district court to [disqualify the attorney] under an abuse of discretion standard. We could not expect the district court to rule otherwise where it seems more likely than not that a number of conflicts will materialize.").

Even where an attorney is not actually called as a sworn witness, disqualification is proper where the attorney is nonetheless in the position of serving as an unsworn witness. "An attorney acts as an unsworn witness when his relationship to his client results in his having first-hand knowledge of the events presented at trial." *Locascio*, 6 F.3d at 933. In such circumstances, an uncalled attorney "can still be disqualified, since his performance as an advocate can be impaired by his relationship to the events in question. For example, the attorney may be constrained from making certain arguments on behalf of his client because of his own involvement, or may be tempted to minimize his own conduct at the expense of his client. Moreover, his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination." *Id.*; *see also Ciak v. United States*, 59 F.3d 296, 305 (2d Cir. 1995) ("[An attorney's] arguments to the jury about [a witness's] prior statements would be viewed as a statement of a witness as well as of an advocate – thereby creating a conflict severe enough to require [the attorney's] disqualification."); *United States v. McKeon*, 738 F.2d 26, 34-35 (2d Cir. 1984) ("If counsel were to cross-examine the witness as to her conversations with him, argue the credibility of her

testimony to the jury, or suggest alternative interpretations of her account of the conversation, he would place himself in the position of an unsworn witness and implicitly put his own credibility at issue. . . . [T]he Sixth Amendment interest in counsel of choice must give way when chosen counsel is so compromised."). And because the Government, not the defendant, is prejudiced when a defense attorney becomes an unsworn witness, "[w]aiver by the defendant is ineffective in curing the impropriety in such situations." *Locascio*, 6 F.3d at 934.

"In deciding a motion for disqualification, the district court recognizes a presumption in favor of the accused's chosen counsel." *Locascio*, 6 F.3d at 931. "Where the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right is to take precedent must generally be left to the defendant and not be dictated by the government." *Perez*, 325 F.3d at 125. Nevertheless, "where a serious potential conflict of interest exists, a trial judge has broad discretion to refuse a defendant his or her choice of counsel." *United States ex rel. Stewart v. Kelly*, 870 F.2d 854, 857 (2d Cir. 1989); *see also Wheat v. United States*, 486 U.S. 153, 164 (1988) (holding that presumption in favor of petitioner's counsel of choice "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict"); *United States v. Zichettello*, 208 F.3d 72, 104 (2d Cir. 2000) (noting a district court's "substantial latitude" to require disqualification even where defendants have attempted to waive any potential conflict as long as it determines that the conflict is "severe"). Thus, "[i]n order to avoid lurking potential conflicts and to preserve the public's confidence in the integrity of the judicial system," district courts have discretion to reject a defendant's waiver of an actual or potential conflict. *United States* v. *Oberoi*, 331 F.3d 44, 52 (2d Cir. 2003) (citing *Wheat*, 486 U.S. at 162-63); *see also United States v. Rogers*, 9 F.3d 1025, 1030-32 (2d Cir. 1993); *Locascio*, 6 F.3d at 931-35 (2d Cir. 1993). Even the risk of a potential conflict becoming an actual conflict is, in certain cases, sufficient to empower the district court to decline to accept a waiver. *See Jones*, 381 F.3d at 120-21; *United States v. Gonzales*, 105 F. Supp. 2d 220, 223 (S.D.N.Y. 2000); *United States v. Rahman*, 105 F. Supp. 2d 220, 223 (S.D.N.Y. 1994) (judicial assessment "must include . . . both a prudent awareness of how little can be predicted with certainty before a trial begins and a sober regard for how much can go wrong once a trial starts").

### III. Discussion

The Government does not allege, and has no evidence to demonstrate, that Mr. Griffin is criminally implicated in the conduct charged against the defendant, and that, disqualification is therefore required. *Cf. Fulton*, 5 F.3d at 614 (defense counsel disqualified because he was implicated in the same criminal conduct as his client). Furthermore, the Government believes that, with respect to pretrial matters, the potential conflict is not "so severe" to warrant disqualification of the defendant's preferred counsel or compromise the integrity of these proceedings. *Perez*, 325 F.3d at 125; *see also United States v. Jose Perez*, 19 Cr. 257 (PAE), January 9, 2020 Minute Entry (defendant whose counsel was a potential fact witness at trial could nonetheless waive conflict for pretrial proceedings). *United States v. Pabellon*, 19 Cr. 739 (LGS), October 15, 2019 Minute Entry (same); *United States v. Arison-Perez*, S1 10 Cr. 574 (ALC), Dkt. 32 (same).

However, within the last week, defense counsel has informed the Government that this matter will likely proceed to trial. Given the change in posture, there is a substantial risk that Mr. Griffin's disqualification may become necessary. As described above, Mr. Griffin, acting on the defendant's behalf, had conversations with Attorney-3 about resolving Attorney-3's request for a

hearing that could have exposed the defendant's fraud.  If Mr. Griffin were to remain as lead trial counsel, he would be in the position of cross-examining Attorney-3 regarding those conversations.  Not only does this present a "severe" conflict, where Mr. Griffin, consciously or not, may seek to distance himself from allegations of his client's fraud, such participation by Mr. Griffin as an unsworn witness at trial would also prejudice the Government.

Furthermore, the Government has considered whether the conflict could be avoided, for example, through testimonial stipulations.  There is, however, no guarantee that the parties will ever, let alone at this stage of the proceeding, be able to agree to stipulation(s) that could mitigate the conflict presented here.  Accordingly, the Government respectfully submits that the Court should consider whether disqualification of Mr. Griffin is necessary at this time based on his status as a potential sworn or unsworn witness, and the likelihood that this matter will proceed to trial.  Should the Court determine that Mr. Griffin can nonetheless continue to represent the defendant, however, the Court should conduct a *Curcio* hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation.  A proposed script is attached at Exhibit A.

        Respectfully submitted,

        AUDREY STRAUSS
        United States Attorney

by: _____
        Rushmi Bhaskaran
        Assistant United States Attorney
        (212) 637-2439

cc:    Brian Griffin, Esq. (by ECF)

# GOVERNMENT'S PROPOSED *CURCIO* QUESTIONS
# AS TO STUART FINKELSTEIN

The Government respectfully requests the Court include the following questions in its examination of defendant Stuart Finkelstein pursuant to the procedures outlined in *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982). The Government respectfully requests that the Court address Mr. Finkelstein personally, seek to elicit narrative answers from Mr. Finkelstein, and give Mr. Finkelstein an opportunity to consider the Court's advice and review it with Mr. Griffin prior to accepting a waiver, pursuant to *United States v. Rodriguez*, 968 F.2d 130, 138–39 (2d Cir. 1992).

## I. Introductory Questions

1. How old are you?
2. How far did you go in school?
3. Do you currently consult a doctor for any condition?
4. Are you currently under the influence of alcohol or drugs of any kind?
5. Is there anything about those conditions or medications that affects your ability to see and hear clearly, or to understand what's going on here today?
6. Are you feeling well enough to proceed with this hearing today?

## II. Circumstances of Representation

7. Do you understand that you are currently represented by attorney Brian Griffin, who is sitting next to you today?
8. Because Mr. Griffin represented you in connection of fraud allegations lodged against in a civil case, Mr. Griffin likely has first-hand knowledge of certain facts that might be relevant to the question of whether you are guilty of the obstruction of justice charge in the Indictment. For example, Mr. Griffin could have first-hand knowledge of your efforts to cancel a hearing that was filed in connection with one of the lawsuits you filed. This topic could be relevant to the issue of

whether you committed obstruction of justice, as charged in Count Three of the Indictment. Do you understand that?

9. Therefore, it is possible that, if your case proceeds to trial, the Government might seek to call Mr. Griffin as a witness against you, though that is not certain at this time. Do you understand?

10. If that were to happen, it is very likely that I would not permit Mr. Griffin to be your lawyer at trial, because a lawyer cannot represent a defendant that he also has to testify against. Do you understand that?

11. Do you understand that, because of his personal involvement as a potential witness in this case, a conflict of interest exists that could impact the way in which Mr. Griffin gives you advice about the case?

12. Because of this conflict, I wish to advise you of certain matters. You should understand that under the United States Constitution and the laws of this country, you are entitled to the aid and assistance of counsel at all times in these proceedings. You are entitled to counsel of your own choice unless there is a strong legal reason for disqualifying that attorney. Do you understand that?

13. It is essential to the idea of an adequate defense in a criminal proceeding that your attorneys have no conflicts or adverse interests of any kind. That is to say, he or she cannot, unless it is with your knowledge and consent, have any conflicting interest in the case. You have the right to the assistance of a lawyer whose loyalty to you is undivided and not subject to any factor that might intrude upon that loyalty. The purpose of this law is to ensure that you have the full devoted defense furnished to you by an attorney who has no other possible interest of any kind in this matter. Do you understand that?

14. Even apart from possibly being unable to represent you at trial, Mr. Griffin's personal involvement in the case could, even if only subconsciously, limit or hinder steps or actions that he might otherwise take during pretrial proceedings, or arguments that he might otherwise make, or advice he might otherwise give you in the course of his representation of you.  For example, Mr. Griffin might be less likely to recommend arguing that you relied on his advice when responding to allegations of fraud, which could be a possible argument about why you might not be guilty of obstruction of justice, if he had personal knowledge at the time he gave you that advice that you were filing fraudulent lawsuits.   Do you understand that example of how this conflict might affect Mr. Griffin's advice to you?

15. Similarly, because he might have that inclination not to recommend certain arguments, Mr. Griffin's view of how weak or strong your case is might be affected, and that might affect any advice he gives you about whether to plead guilty or go to trial.  Do you understand that?

16. Similarly, even if he wasn't called at a witness at trial, he might question witnesses with whom he had communications regarding the conduct the Government charged in this case.  His personal involvement could, even if only subconsciously, limit or hinder the types of questions he would ask of those witnesses in your defense.  Do you understand that?

17. Do you understand that knowing that he might have to testify at trial, which he may or may not want to do, might also impact Mr. Griffin's advice to you about whether to plead guilty or go to trial, even if only subconsciously.  Do you understand that?

18. Do you understand that these are only examples of how Mr. Griffin's advice to you might be affected by his personal involvement, and that there could be other ways?

19. So that I can be sure you understand completely, please describe for me, in your own words, your understanding of the conflict of interest that Mr. Griffin faces because of his personal

knowledge of certain facts between February 2019 and May 2019.

20. In a moment I am going to ask you whether you want to proceed with Mr. Griffin as your lawyer, or whether you want a different lawyer to take over your case. Before I ask you that, though, do you understand that, if you decide to proceed with Mr. Griffin and waive any conflict that might exist, if you are convicted, you will probably not be able to appeal or collaterally attack your conviction based on any purported ineffectiveness of your counsel stemming from the conflicts that you waived? Do you understand that?

21. Do you understand that an appellate court, or a court sitting in collateral review of your conviction, will take into account your consent to the continued representation by Mr. Griffin and will probably decide that you have given up your right to complain of any problems stemming from the effects on Mr. Griffin's representation of you from his personal knowledge of the case and his status as a potential witness? Do you understand that?

22. Have you received any inducement or promise that may have influenced your decision on whether to waive these conflicts?

23. Have you been threatened in any way concerning your decision on this issue?

24. Have you discussed these conflict-of-interest matters with Mr. Griffin?

25. Are you satisfied with Mr. Griffin's representation of you so far?

26. Have you consulted with another attorney, who does not have a potential conflict of interest in this case, to advise you about these conflict issues?

27. Do you wish to have any further opportunity to consult with that lawyer or Mr. Griffin before you make your decision?

28. Are there any matters that I have discussed with you, or matters that I have not discussed with you, that you wish to have explained further?

29. Having considered the way in which Mr. Griffin's representation of you may be impacted, do you wish to waive the conflict of interest and continue with Mr. Griffin as your lawyer?

30. Is your waiver of your right to conflict-free representation voluntary and made of your own free will?

31. And do you understand that this waiver is only for purposes other than trial, and that if this case goes to trial we will need to reexamine this issue, and it is very possible that I would then disqualify Mr. Griffin from serving as your lawyer at trial?

**III. Questions for Mr. Griffin**

32. Have you discussed the conflicts of interest I have just mentioned with Mr. Finkelstein?

33. Do you feel that he understands the possible risks of being represented by a lawyer with potential conflicts of interest?

34. Knowing that you might have personal knowledge of certain aspects of the alleged obstruction of justice charge that the Government has brought, and knowing that you might possibly be a witness if this case were to proceed to trial (at which time I would quite possibly disqualify you), do you feel that you will be able to set aside any impacts of those matters and fully and effectively represent your client in these pretrial proceedings, including in advising him about the relative strengths and weaknesses of the case for purposes of deciding whether to plead guilty or go to trial?

\*\*\*

35. Is there anything else that either side would like the Court to state or inquire about in this regard before I accept the defendant's waiver?