

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 11, 2020

**BY EMAIL**
Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

> Re:    *United States v. Stuart Finkelstein*, 19 Mag. 10645, 20 Cr.__ (PGG)

Dear Judge Gardephe:

The Government writes to:  (1) provide the Court with additional information concerning the above-captioned matter that was assigned to Your Honor upon the Government's filing, on January 23, 2020, of a notice of intent to file an Information; and (2) request a hearing, pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982).

## I.  Relevant Background

On or about November 12, 2019, the Government charged defendant Stuart Finkelstein with mail fraud, aggravated identity theft, false declarations before a court, and obstruction of justice.  (Dkt. 1).  These charges stem from the Government's allegation that the defendant stole the identities of two individuals in order to file fraudulent lawsuits pursuant to the Americans with Disabilities Act (the "ADA") in the United States District Courts for the Southern District of Florida and the Southern District of New York.  The ADA lawsuits filed in the Southern District of New York that underlie these charges are listed in Attachment A.[1]

A waiver of indictment and arraignment proceeding is currently scheduled for March 4, 2020 at 10:45 a.m.

## II.  The Government's Request for a Hearing Pursuant to *United States v. Curcio*

The defendant has retained Brian Griffin, Esq., to represent him in this matter.  As described below, Mr. Griffin is a witness to certain events that are being prosecuted by this Office. The Government respectfully submits that, for the purposes of pretrial proceedings and potential pretrial resolution of this matter, the conflict is waivable if the defendant so desires.  However, such a waiver should be limited only to pretrial proceedings or a pretrial resolution of the case, and the issue can be reexamined if the case proceeds to trial.

---

[1] The Government has also provided, in Attachment B, other ADA lawsuits that the defendant filed in the Southern District of New York which, at this time, are not within the scope of the Government's prosecution.

1

Immediately prior to the waiver of indictment and arraignment proceeding on March 4, the Government respectfully requests the Court to conduct a hearing pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), at which the defendant is advised of the nature of the conflict and its potential effects on the advice he receives, and is then given an opportunity to waive the conflict if he so chooses. The Government has proposed questions for the *Curcio* hearing in Attachment C. It is the Government's understanding that the defendant will consult with a lawyer without any potential conflict prior to March 4. To the extent the Court wishes to conduct the *Curcio* hearing in two parts, where the defendant is first advised of the potential conflict and then returns to Court after consulting another lawyer, the Government believes that the defendant can waive indictment and be arraigned prior to the completion of the *Curcio* hearing.

### A. Mr. Griffin's Potential Conflict

Count Four of the Government's Information, which will track Count Four of the Complaint, will charge the defendant with obstruction of justice. Mr. Griffin is a witness to some of the events that form the basis of this charge.

In approximately early 2019, a newspaper wrote an article about the defendant, claiming that he was filing fraudulent lawsuits pursuant to the ADA on behalf of an individual ("Victim-2").[2] Around this time, the Government understands that the defendant retained Mr. Griffin to represent him in response to allegations that the defendant had filed fraudulent lawsuits. Some of these allegations were made directly in the civil lawsuits that the defendant had filed on behalf of Victim-2.

In approximately February 2019, one of the restaurants ("Restaurant-2") the defendant sued requested court intervention to determine whether the defendant's lawsuit against Restaurant-2 was fraudulent. In response to that request, the court ordered the defendant to appear in person, along with Victim-2, for a hearing. Rather than appear in person with Victim-2—which he could not—the defendant, through Mr. Griffin, provided certain documents, including phone records, bank records, and a photograph, to the attorney for Restaurant-2 ("Attorney-3"), which the defendant represented established that the Restaurant-2 lawsuit was authorized by Victim-2. While the Government does not contend that the documents were falsified, the Government believes the inference urged by the defendant—that Victim-2 authorized the lawsuit—was false. In addition, the defendant informed Restaurant-2 that he would give back some of the settlement money from the lawsuit if Restaurant-2 withdrew its request for a hearing. On the basis of these representations, Attorney-3 withdrew Restaurant-2's request for the hearing.

For the avoidance of any doubt, the Government does not believe that Mr. Griffin has criminal exposure in this matter.

---

[2] For ease of reference, this letter uses the same aliases for individuals as those used in the Complaint.

## B. Applicable Law

The Sixth Amendment provides a criminal defendant with the right to the effective assistance of counsel, which includes "the right to representation by conflict-free counsel." *United States v. Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002) (*quoting United States v. Blau*, 159 F.3d 68, 74 (2d Cir.1998). District courts have two separate obligations where counsel has a possible conflict of interest. First, the district court has an "inquiry obligation" when it is apprised of the possibility of a conflict of interest, under which it must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994); *see Armienti v. United States*, 313 F.3d 807, 810 (2d Cir. 2002). If, after inquiry, "the court discovers no genuine conflict, it has no further obligation." *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003). But if the district court finds after some inquiry that the defendant's attorney suffers from an actual or potential conflict, the district court then has a second, "disqualification/waiver" obligation, under which it is required either to disqualify the attorney if the conflict is sufficiently severe, or, if the conflict may be waived, to conduct a *Curcio* proceeding to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict from the defendant. *See United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982).

"At the other end of the spectrum [from a finding of no conflict], if the court determines that counsel has an actual conflict that is so severe as to indicate *per se* that the rendering of effective assistance will be impeded, or is analogous to such a conflict in 'breadth and depth,' the court must . . . disqualify counsel." *Perez*, 325 F.3d at 125 (citations and quotations omitted). In the Second Circuit, *per se* conflicts have been found only in two classes of cases, and the Circuit has repeatedly refused to expand the rule beyond those categories: where trial counsel "is not authorized to practice law" and where trial counsel "is implicated in the very crime for which his or her client is on trial." *Armienti*, 234 F.3d at 823.

"And if, between these two extremes, the court determines that the attorney suffers from a lesser [actual] or only a potential conflict, then it may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice." *Perez*, 325 F.3d at 125. An actual conflict exists when "during the course of the representation, the attorney's and defendant's interests diverge with respect to a material legal or factual issue or to a course of action." *Schwarz*, 283 F.3d at 91 (applying standard derived from *Cuyler v. Sullivan*, 446 U.S. 335 (1980)). To show actually divergent interests, "[s]peculation is not enough." *Triana v. United States*, 205 F.3d 36, 42 (2d Cir. 2000). Nor is a "mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). By contrast, an attorney has a potential conflict if "'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" *Perez*, 325 F.3d at 125 (quoting *United States v. Klitti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998)). The classification of a conflict as "actual" or "potential" can often be difficult or unclear, though drawing such a distinction may be unnecessary as most of both types of conflicts are subject to waiver.

With respect to waiver or disqualification, although a defendant may generally waive his Sixth Amendment right to a non-conflicted attorney, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*,

486 U.S. 153, 159 (1988); *see United States v. Fulton*, 5 F.3d 605, 612 (2d Cir. 1993). "The courts do, of course, retain discretion to reject a defendant's knowing and intelligent waiver when his attorney's conflict jeopardizes the integrity of judicial proceedings. But absent such institutional concerns, courts will not assume too paternalistic an attitude in protecting the defendant from himself, and although the defendant's choice of counsel may sometimes seem woefully foolish to the court, the choice remains his." *Perez*, 325 F.3d at 125–26 (citations and quotations omitted). Where a conflict is so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation, then the court must disqualify the attorney. *See Levy*, 25 F.3d at 152–53; *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978). Such situations arise rarely, such as where counsel is implicated in related criminal conduct, or where counsel has a clear and significant personal financial interest in the matter that is directly contrary to the interests of his client. *See Perez*, 325 F.3d at 126–27 (discussing cases).

Finally, the Second Circuit has detailed the procedures for a *Curcio* inquiry:

> At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

*Perez*, 325 F.3d at 119.

## C. Discussion

Mr. Griffin is potentially a relevant witness to the defendant's obstruction of justice from approximately February 2018 to May 2019, as charged in Count Four of the proposed Information. This is so because of Mr. Griffin's role in transmitting certain documents to Attorney-3.

It is not clear that this case will proceed to trial, nor is it clear that the Government will need to call Mr. Griffin (or that it would be able to do so for privilege or other reasons). Accordingly, the Government submits that the attorney-as-witness conflict remains waivable at this stage, because, for a variety of reasons, a rational defendant could still knowingly and voluntarily desire counsel's representation after being advised of the nature of the issue and the ways in which it might affect his advice. *See generally Levy*, 25 F.3d at 152–53. Certainly, counsel may be less inclined to recommend certain strategies, which may impact counsel's assessment of the relative strength of the Government's case when advising the defendant on the attractiveness of potential negotiated resolutions. But these possible impacts on counsel's advice at this stage are no different in kind or degree from many other waivable conflicts, such as those involving limits on counsel's ability or desire to question the credibility of certain prosecution witnesses. The Government does not believe that the conflict here is so serious at the pretrial stage that it would "jeopardize[] the integrity of judicial proceedings." *Perez*, 325 F.3d at 125–26.

The Second Circuit has affirmed an order disqualifying an attorney over the defendant's objection where the attorney was likely to be called as a prosecution witness as a permissible exercise of the district court's broad discretion in this area.[3]  *See United States v. Cain*, 671 F.3d 271 (2d Cir. 2012).  But in that case, unlike here, the Government had subpoenaed the attorney to testify in the Grand Jury during the pendency of pretrial proceedings under the crime-fraud exception to attorney-client privilege, and the parties had determined that they would be unable to agree to alternative measures (such as a stipulation) obviating the need for the attorney's testimony at trial.  In this case, by contrast, no such imminent testimony exists, and it remains unclear whether a trial will be necessary or whether the Government will seek to call Mr. Griffin as a witness.  For present purposes, the Government submits that the conflict remains waivable, and other Judges in this District have reached the same conclusion in analogous circumstances.  *See, e.g.*, *United States v. Arison-Perez*, S1 10 Cr. 574 (ALC) (11/26/19 Minute Entry and related filings).

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by: _____
Rushmi Bhaskaran
Assistant United States Attorney
(212) 637-2439

cc:    Brian Griffin, Esq. (by ECF)

Attachments

---

[3] Given that "[c]onflicts of interest are notoriously hard to predict . . . , even for those intimately familiar with those proceedings," it is important for "district courts [to] have latitude to permit or deny a defendant's waiver of such conflict."  *United States v. Jones*, 381 F.3d 114, 120 (2d Cir. 2004); *see Wheat*, 486 U.S. at 160 (providing that district courts have "substantial latitude" in determining whether a conflict is waivable).  Accordingly, even the risk of a potential conflict becoming an actual conflict is, in certain cases, sufficient to empower the district court to decline to accept a waiver.  *Jones*, 381 F.3d at 121; *United States v. Rahman*, 105 F. Supp. 2d 220, 223 (S.D.N.Y. 1994) (stating that judicial assessment "must include . . . both a prudent awareness of how little can be predicted with certainty before a trial begins and a sober regard for how much can go wrong once a trial starts").

**Attachment A: SDNY Lawsuits Underlying Count One of the Complaint (Mail Fraud)**

| Docket Number | Judge | Status |
|---|---|---|
| 1:17-cv-09701-AJN-DCF | Hon. Alison J. Nathan | Closed |
| | Hon. Debra Freeman | |
| 1:18-cv-00111-ALC-DCF | Hon. Andrew L. Carter, Jr. | Closed |
| | Hon. Debra Freeman | |
| 1:17-cv-07256-AT | Hon. Analisa Torres | Closed |
| 1:17-cv-09061-AT | Hon. Analisa Torres | Closed |
| 1:17-cv-08630-AT | Hon. Analisa Torres | Closed |
| 1:17-cv-06655-CM | Hon. Colleen McMahon | Closed |
| 1:17-cv-06653-CM | Hon. Colleen McMahon | Closed |
| 1:17-cv-06773-CM | Hon. Colleen McMahon | Closed |
| 1:18-cv-02621-ER-KNF | Hon. Edgardo Ramos | Closed |
| | Hon. Kevin Nathaniel Fox | |
| 1:17-cv-07064-GBD-DCF | Hon. George B. Daniels | Closed |
| | Hon. Debra Freeman | |
| 1:18-cv-02077-GHW | Hon. Gregory H. Woods | Closed |
| 1:17-cv-06658-GHW | Hon. Gregory H. Woods | Closed |
| 1:18-cv-08006-JGK | Hon. John G. Koeltl | Closed |
| 1:18-cv-01472-JGK[4] | Hon. John G. Koeltl | Closed |
| 1:17-cv-06774-JGK | Hon. John G. Koeltl | Closed |
| 1:18-cv-01152-JGK-KNF | Hon. John G. Koeltl | Closed |
| | Hon. Kevin Nathaniel Fox | |
| 1:17-cv-09239-JPO | Hon. J. Paul Oetken | Closed |
| 1:18-cv-00347-KHP | Hon. Katharine H. Parker | Closed |
| 1:17-cv-10127-KPF | Hon. Katherine Polk Failla | Closed |
| 1:18-cv-08007-PAC | Hon. Paul A. Crotty | Closed |
| 1:18-cv-09929-PAC | Hon. Paul A. Crotty | Closed |
| 1:18-cv-01337-PAE[5] | Hon. Paul A. Engelmayer | Closed |
| 1:18-cv-00588-PGG-RWL | Hon. Paul G. Gardephe | Closed |
| | Hon. Robert W. Lehrburger | |
| 1:18-cv-01789-RA[6] | Hon. Ronnie Abrams | Closed |
| 1:17-cv-06521-RWS | Hon. Robert W. Sweet | Closed |
| 1:17-cv-09577-SHS | Hon. Sidney H. Stein | Closed |

---

[4] A declaration the defendant filed under oath in this matter is the subject of Count Six of the Complaint, which charges the defendant with False Declarations Before A Court, in violation of Title 18, United States Code, Section 1623(a).

[5] A declaration the defendant filed under oath in this matter is the subject of Count Five of the Complaint, which charges the defendant with False Declarations Before A Court, in violation of Title 18, United States Code, Section 1623(a).

[6] Count Four of the Complaint, charging the defendant with obstruction of justice in violation of Title 18, United States Code, Section 1512(c)(2), relates to the defendant's alleged conduct in this proceeding.

| Docket Number | Judge | Status |
|---|---|---|
| 1:18-cv-00871-VEC[7] | Hon. Valerie E. Caproni | Closed |
| 1:18-cv-11770-VSB | Hon. Vernon S. Broderick | Closed |
| 1:17-cv-07697-WHP | Hon. William H. Pauley III | Closed |

---

[7] Count Three of the Complaint, charging the defendant with obstruction of justice in violation of Title 18, United States Code, Section 1512(c)(2), relates to the defendant's alleged conduct in this proceeding.

**Attachment B:  Other ADA Lawsuits Filed by the Defendant in the Southern District of New York**

| Docket Number | Judge | Status |
|---|---|---|
| 1:17-cv-03814-AJN | Hon. Alison J. Nathan | Closed |
| 1:16-cv-06426-ALC-KHP | Hon. Andrew L. Carter, Jr. | Closed |
| | Hon. Katharine H. Parker | |
| 1:16-cv-09192-ALC-BCM | Hon. Andrew L. Carter, Jr. | Closed |
| | Hon. Barbara C. Moses | |
| 1:18-cv-04478-AT | Hon. Analisa Torres | Closed |
| 1:18-cv-05954-CM | Hon. Colleen McMahon | Closed |
| 1:18-cv-11070-GBD | Hon. George B. Daniels | Closed |
| 1:18-cv-05001-GBD | Hon. George B. Daniels | Closed |
| 1:19-cv-04938-JMF | Hon. Jesse M. Furman | Closed |
| 1:18-cv-10767-JMF-DCF | Hon. Jesse M. Furman | Closed |
| | Hon. Debra Freeman | |
| 1:18-cv-07405-KPF | Hon. Katherine Polk Failla | Closed |
| 1:18-cv-07277-KPF | Hon. Katherine Polk Failla | Closed |
| 1:18-cv-02942-LGS-GWG | Hon. Lorna G. Schofield | Closed |
| 1:18-cv-04055-PAE | Hon. Paul A. Engelmayer | Closed |
| 1:18-cv-04691-PGG-KHP | Hon. Paul G. Gardephe | Closed |
| | Hon. Katharine H. Parker | |
| 1:18-cv-03259-VEC | Hon. Valerie E. Caproni | Closed |
| 1:18-cv-06584-VEC | Hon. Valerie E. Caproni | Closed |
| 1:18-cv-05955-VEC | Hon. Valerie E. Caproni | Closed |
| 1:17-cv-02638-VSB | Hon. Vernon S. Broderick | Closed |
| 1:17-cv-04401-WHP-SN | Hon. William H. Pauley III | Closed |
| | Hon. Sarah Netburn | |
| 1:19-cv-06264-DAB | Hon. Deborah A. Batts | Open |
| 1:19-cv-08496-ER | Hon. Edgardo Ramos | Open |
| 1:19-cv-06578-ER-SLC | Hon. Edgardo Ramos | Open |
| | Hon. Sarah L. Cave | |
| 1:19-cv-09038-GBD | Hon. George B. Daniels | Open |
| 1:19-cv-08012-JMF | Hon. Jesse M. Furman | Open |
| 1:19-cv-09674-JMF | Hon. Jesse M. Furman | Open |
| 1:19-cv-07385-KPF | Hon. Katherine Polk Failla | Open |
| 1:19-cv-05894-LGS | Hon. Lorna G. Schofield | Open |
| 1:19-cv-10567-PGG-RWL | Hon. Paul G. Gardephe | Open |
| | Hon. Robert W. Lehrburger | |
| 1:19-cv-07645-VSB | Hon. Vernon S. Broderick | Open |

**ATTACHMENT C**
**GOVERNMENT'S PROPOSED *CURCIO* QUESTIONS**
**AS TO STUART FINKELSTEIN**

The Government respectfully requests the Court include the following questions in its examination of defendant Stuart Finkelstein pursuant to the procedures outlined in *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982). The Government respectfully requests that the Court address Mr. Finkelstein personally, seek to elicit narrative answers from Mr. Finkelstein, and give Mr. Finkelstein an opportunity to consider the Court's advice and review it with Mr. Griffin prior to accepting a waiver, pursuant to *United States v. Rodriguez*, 968 F.2d 130, 138–39 (2d Cir. 1992).

## I. Introductory Questions

1. How old are you?

2. How far did you go in school?

3. Do you currently consult a doctor for any condition?

4. Are you currently under the influence of alcohol or drugs of any kind?

5. Is there anything about those conditions or medications that affects your ability to see and hear clearly, or to understand what's going on here today?

6. Are you feeling well enough to proceed with this hearing today?

## II. Circumstances of Representation

7. Do you understand that you are currently represented by attorney Brian Griffin, who is sitting next to you today?

8. Because Mr. Griffin represented you in connection of fraud allegations lodged against in a civil case, Mr. Griffin likely has first-hand knowledge of certain facts that might be relevant to the question of whether you are guilty of the obstruction of justice charge that the Government seeks to charge you with by Information. For example, Mr. Griffin could have first-hand

1

knowledge of your communications with a restaurant, and its attorney, that claimed that you were filing fraudulent lawsuits. This topic could be relevant to the issue of whether you committed obstruction of justice, as charged in Count Four of the Information. Do you understand that?

9. Therefore, it is possible that, if your case proceeds to trial, the Government might seek to call Mr. Griffin as a witness against you, though that is not certain at this time. Do you understand?

10. If that were to happen, it is very likely that I would not permit Mr. Griffin to be your lawyer at trial, because a lawyer cannot represent a defendant that he also has to testify against. Do you understand that?

11. Do you understand that, because of his personal involvement as a potential witness in this case, a conflict of interest exists that could impact the way in which Mr. Griffin gives you advice about the case?

12. Because of this conflict, I wish to advise you of certain matters. You should understand that under the United States Constitution and the laws of this country, you are entitled to the aid and assistance of counsel at all times in these proceedings. You are entitled to counsel of your own choice unless there is a strong legal reason for disqualifying that attorney. Do you understand that?

13. It is essential to the idea of an adequate defense in a criminal proceeding that your attorneys have no conflicts or adverse interests of any kind. That is to say, he or she cannot, unless it is with your knowledge and consent, have any conflicting interest in the case. You have the right to the assistance of a lawyer whose loyalty to you is undivided and not subject to any factor that might intrude upon that loyalty. The purpose of this law is to ensure that you have the full devoted defense furnished to you by an attorney who has no other possible interest of any kind in

this matter.  Do you understand that?

14. Even apart from possibly being unable to represent you at trial, Mr. Griffin's personal involvement in the case could, even if only subconsciously, limit or hinder steps or actions that he might otherwise take during pretrial proceedings, or arguments that he might otherwise make, or advice he might otherwise give you in the course of his representation of you.  For example, Mr. Griffin might be less likely to recommend arguing that you relied on his advice when responding to allegations of fraud, which could be a possible argument about why you might not be guilty of obstruction of justice, if he had personal knowledge at the time he gave you that advice that you were filing fraudulent lawsuits.   Do you understand that example of how this conflict might affect Mr. Griffin's advice to you?

15. Similarly, because he might have that inclination not to recommend certain arguments, Mr. Griffin's view of how weak or strong your case is might be affected, and that might affect any advice he gives you about whether to plead guilty or go to trial.  Do you understand that?

16. Do you understand that knowing that he might have to testify at trial, which he may or may not want to do, might also impact Mr. Griffin's advice  advice to you about whether to plead guilty or go to trial, even if only subconsciously.  Do you understand that?

17. Do you understand that these are only examples of how Mr. Griffin's advice to you might be affected by his personal involvement, and that there could be other ways?

18. So that I can be sure you understand completely, please describe for me, in your own words, your understanding of the conflict of interest that Mr. Griffin faces because of his personal knowledge of certain facts between February 2019 and May 2019.

19. In a moment I am going to ask you whether you want to proceed with Mr. Griffin as your lawyer, or whether you want a different lawyer to take over your case.  Before I ask you that,

though, do you understand that, if you decide to proceed with Mr. Griffin and waive any conflict that might exist, if you are convicted, you will probably not be able to appeal or collaterally attack your conviction based on any purported ineffectiveness of your counsel stemming from the conflicts that you waived? Do you understand that?

20. Do you understand that an appellate court, or a court sitting in collateral review of your conviction, will take into account your consent to the continued representation by Mr. Griffin and will probably decide that you have given up your right to complain of any problems stemming from the effects on Mr. Griffin's representation of you from his personal knowledge of the case and his status as a potential witness? Do you understand that?

21. Have you received any inducement or promise that may have influenced your decision on whether to waive these conflicts?

22. Have you been threatened in any way concerning your decision on this issue?

23. Have you discussed these conflict-of-interest matters with Mr. Griffin?

24. Are you satisfied with Mr. Griffin's representation of you so far?

25. Have you consulted with another attorney, who does not have a potential conflict of interest in this case, to advise you about these conflict issues?

26. Do you wish to have any further opportunity to consult with that lawyer or Mr. Griffin before you make your decision?

27. Are there any matters that I have discussed with you, or matters that I have not discussed with you, that you wish to have explained further?

28. Having considered the way in which Mr. Griffin's representation of you may be impacted, do you wish to waive the conflict of interest and continue with Mr. Griffin as your lawyer?

29. Is your waiver of your right to conflict-free representation voluntary and made of your own free will?

30. And do you understand that this waiver is only for purposes other than trial, and that if this case goes to trial we will need to reexamine this issue, and it is very possible that I would then disqualify Mr. Griffin from serving as your lawyer at trial?

## III. <u>Questions for Mr. Griffin</u>

31. Have you discussed the conflicts of interest I have just mentioned with Mr. Finkelstein?

32. Do you feel that he understands the possible risks of being represented by a lawyer with potential conflicts of interest?

33. Knowing that you might have personal knowledge of certain aspects of the alleged obstruction of justice charge that the Government intends to bring against Mr. Finkelstein, and knowing that you might possibly be a witness if this case were to proceed to trial (at which time I would quite possibly disqualify you), do you feel that you will be able to set aside any impacts of those matters and fully and effectively represent your client in these pretrial proceedings, including in advising him about the relative strengths and weaknesses of the case for purposes of deciding whether to plead guilty or go to trial?

***

34. Is there anything else that either side would like the Court to state or inquire about in this regard before I accept the defendant's waiver?