L5BGfinC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                            21 Cr. 217 (PGG)

 5   STUART FINKELSTEIN,

 6                                            Conference
                   Defendant.
 7   ------------------------------x

 8
                                             New York, N.Y.
 9                                           May 11, 2021
                                             2:00 p.m.
10

11   Before:

12                    HON. PAUL G. GARDEPHE,

13                                           District Judge

14                         APPEARANCES

15   AUDREY STRAUSS
          United States Attorney for the
16        Southern District of New York
     RUSHMI BHASKARAN
17        Assistant United States Attorney

18   BRIAN J. GRIFFIN
          Attorney for Defendant
19

20

21

22

23

24

25
```

L5BGfinC

1          (In open court)

2          THE DEPUTY CLERK:  United States of America v. Stuart

3     Finkelstein.

4          Counsel for the government?

5          MS. BHASKARAN:  Good afternoon, your Honor.  Rushmi

6     Bhaskaran for the government.

7          THE DEPUTY CLERK:  Counsel for the defendant, please

8     state your appearance.

9          MR. GRIFFIN:  Good afternoon, your Honor.  Brian

10    Griffin for Mr. Finkelstein.

11         THE COURT:  This matter is on my calendar for purposes

12    of conducting a hearing as to whether defense counsel should be

13    disqualified.  I'm also going to conduct a *Curcio* hearing this

14    afternoon.

15         The background is as follows:  In a February 11th,

16    2020 letter, which is Docket No. 45, the government informed me

17    that defense counsel, Brian Griffin has a potential conflict of

18    interest.  I scheduled a *Curcio* hearing for March 4th, 2020.

19    Because of the pandemic, the hearing had to be postponed.  It

20    was then further postponed as the pandemic spread across the

21    country and because of a need to conduct the hearing in person.

22         In its February 11th, 2020 letter, the government

23    stated that the conflict was waivable for purposes of pretrial

24    proceedings.  But asked that the waiver, quote, "be limited

25    only to pretrial proceedings or a pretrial resolution of the

L5BGfinC

case," close quote.  And that the issue, quote, "be re-examined
if the case proceeds to trial."

On May 4th, 2021, the government and defense counsel
submitted letters in which they stated the defendant has
rejected the government's plea offer and intends to proceed to
trial, citing Docket Nos. 43 and 44.  The government now asks
that I, quote, "Consider whether disqualification of
Mr. Griffin is necessary at this time based on his status as a
potential sworn or unsworn witness and the likelihood that this
matter will proceed to trial," citing Docket No. 44 at Page 5.

The charges against the defendant and the government's
relevant factual allegations are as follows:  The defendant is
the charged with mail fraud, aggravated identity theft, false
declarations before a court and obstruction of justice, citing
the indictment Docket No. 35.  The defendant is an attorney
whose practice involves bringing actions of the Americans with
Disability Act, which I'll be referring to as the ADA, against
defendants who operate businesses that are allegedly not in
compliance with the ADA.  The government charges that the
defendant stole the identities of two individuals in order to
file fraudulent lawsuits under the ADA in the United States
District Courts for the Southern District of Florida and the
Southern District of New York.  The government alleges that in
early 2019 a newspaper article was published claiming that the
defendant was filing fraudulent ADA lawsuits on behalf of an

L5BGfinC

1    individual identified as, quote, "victim two," close quote.  At

2    about this time, the defendant retained Brian Griffin to

3    represent him, including in connection with fraud allegations

4    made in connection with lawsuits that the defendant had filed

5    on victim two's behalf, citing Docket No. 44 at Pages 1 through

6    2.

7              In February of 2019, one of the restaurants the

8    defendant had sued under the ADA -- an entity I will refer to

9    as, quote, "restaurant two," requested court intervention to

10   determine whether the lawsuit the defendant had filed against

11   it, a lawsuit that restaurant two had settled, was fraudulent.

12   The Court ordered the defendant and victim two to appear in

13   person for a hearing.  In response, the defendant allegedly

14   directed Mr. Griffin to tell restaurant two's lawyer that

15   defendant would return some of the settlement money if

16   restaurant two withdrew its request for court intervention, at

17   Page 2.

18             The government further alleges that on April 30, 2019,

19   at the defendant's direction, Mr. Griffin transmitted certain

20   documents, including phone records, bank records and a

21   photograph to restaurant two's lawyer.  According to the

22   government, Mr. Griffin represented to restaurant two's lawyer

23   that these documents established that victim two had authorized

24   the lawsuit against restaurant two.  On the basis of these

25   representations, restaurant two's lawyer withdrew the request

L5BGfinC

1    for a hearing, citing Docket No. 45 at Page 2.

2            The government does not contend that Mr. Griffin has

3    any criminal exposure.  And there is no claim that the

4    documents Mr. Griffin provided to restaurant two's lawyer were

5    falsified.  The government instead contends that these

6    governments tend to falsely suggest that victim two had

7    authorized the lawsuit against restaurant two.  The government

8    sees Mr. Griffin merely as a conduit for information and

9    materials that the defendant directed him to supply to

10   restaurant two's lawyer, citing Docket No. 44 at Pages 2 and 4.

11   Finally, the government has not stated that Mr. Griffin is a

12   necessary witness at trial.

13           These facts and circumstances raise two issues.  The

14   first is whether it's necessary to disqualify Mr. Griffin

15   because he will be an unsworn witness at trial.  In the event

16   that Mr. Griffin is not disqualified, it is necessary for me to

17   conduct a *Curcio* hearing to make sure that Mr. Finkelstein

18   understands the risks and potential problems with proceeding

19   with Mr. Griffin as his counsel, given Mr. Griffin's contact

20   with restaurant two's lawyer and the role that evidence of

21   these contacts will play at trial.

22           I will first address the unsworn witness issue.  The

23   government contends that Mr. Griffin's disqualification might

24   be necessary given that he was the conduit for information and

25   materials that the defendant caused to be provided to

L5BGfinC

1   restaurant two's lawyer.  Information and materials that the

2   government contends were provided in furtherance of the

3   defendant's alleged fraudulent scheme and in furtherance of

4   alleged obstruction of justice, citing the indictment, Docket

5   No. 35.  According to the government, quote, "If Mr. Griffin

6   were to remain as lead trial counsel, he would be in the

7   position of cross-examining [restaurant two's lawyer] regarding

8   [their conversations] about resolving [restaurant two's

9   lawyer's] request for a hearing that could have exposed the

10  defendant's fraud," citing Docket No. 44 at Pages 4 to 5.  The

11  government says that it would suffer unfair prejudice if

12  Mr. Griffin were permitted to act as an unsworn witness at

13  trial in this fashion.

14          Mr. Griffin responds that, quote, "There is no danger

15  that [he] would become an unsworn witness to any facts as to

16  which testimony might properly be elicited at trial."  Because

17  his role in transmitting documents to restaurant two's lawyer

18  "does not lead to the conclusion that [he] has any firsthand

19  knowledge about the contents of those documents or of the

20  underlying relationship between Mr. Finkelstein and restaurant

21  two's lawyer," citing Docket No. 43 at Page 4.  Mr. Griffin

22  further argues that the "transmission of documents to

23  [restaurant two's lawyer] alone is an immaterial fact" and that

24  "no relevant or admissible testimony on this point would be

25  properly elicited by calling counsel to the stand."

L5BGfinC

1          As I noted a moment ago, the government has not stated

2     that Mr. Griffin is a necessary witness in trial.  And it has

3     said repeatedly that there's no evidence that Mr. Griffin has

4     any criminal exposure here.  Mr. Griffin does appear to have

5     firsthand knowledge of some of the events that may be presented

6     at trial, however.  He spoke with restaurant two's lawyer about

7     the defendant's offer to return settlement money in order to

8     avoid a hearing that might have exposed defendant's fraud.  And

9     he transmitted documents that purport to demonstrate that the

10    lawsuit against restaurant two was authorized by victim two.

11    Accordingly, absent a stipulation between the parties that

12    keeps Mr. Griffin's name out of the trial with respect to these

13    events, there is a risk that Mr. Griffin could become an

14    unsworn witness at trial.  While the Sixth Amendment provides

15    that, quote, "in all criminal prosecutions the accused shall

16    enjoy the right to have the assistance of counsel for his

17    defense," citing United States Constitution Amendment Six, a

18    defendant "does not have an absolute right to counsel of [his]

19    own choosing," citing *United States v.* Locasio, 6 F.3d 924 at

20    931, Second Circuit 1993, which in turn cites *Wheat v. United*

21    *States*, 486 US 153 at 159 (1988).  "Although a criminal

22    defendant can waiver his Sixth Amendment rights in some

23    circumstances, that right to waiver is not absolute.  Since

24    federal courts have an independent interest in ensuring that

25    criminal trials are conducted within the ethical standards of

L5BGfinC

1    the profession and that legal proceedings appear fair to all

2    who observe them.  The question of disqualification, therefore,

3    implicates not only the Sixth Amendment right of the accused,

4    but also the interests of the courts in preserving the

5    integrity of the process and the government's interest in

6    ensuring a just verdict and a fair trial," quoting *Wheat* 486 US

7    at 160.

8           Rules of professional conduct, as well as case law,

9    limit the circumstances in which an attorney acting in a

10   representative capacity may be a witness at trial, whether

11   sworn or unsworn.  The Second Circuit has stated that, quote,

12   "When faced with an attorney as a sworn or unsworn witness, the

13   proper recourse is to disqualify the attorney, not to exclude

14   the testimony," *United States v. Kliti,* 156 F.3d 150 at 156,

15   Second Circuit 1998.  New York rule of professional conduct

16   3.7(a) provides, and I quote, "A lawyer shall not act as an

17   advocate before a tribunal in a matter in which the lawyer is

18   likely to be a witness on a significant issue of fact unless:

19   One, the testimony relates solely to an uncontested issue; two,

20   the testimony relates solely to the nature and value of legal

21   services rendered in the matter; three, disqualification of the

22   lawyer would work substantial hardship on the client; four, the

23   testimony will relate solely to a matter of formality, there's

24   no reason to believe that substantial evidence will be offered

25   in opposition to the testimony; or five, the testimony is

L5BGfinC

authorized by the tribunal," citing New York rule of

professional conduct 3.7(a).  Even where a lawyer is not called

to testify, he or she may be required to withdraw

representation if the lawyer, quote, "is in a position to be an

[unsworn] witness."  Citing *Locasio,* 6 F.3d 933, quote, "An

attorney acts as an unsworn witness when his relationship to

his client results in his having firsthand knowledge of the

events presented at trial."  For example, "if counsel were to

cross-examine a witness as to her conversation with him, argue

the credibility of her testimony or suggest alternative

interpretations of her account of the conversation, he would

place himself in the position of an unsworn witness," citing

*United States v. McKeon,* 738 F.3d 26 at 35, Second Circuit

1984.  Where an attorney acts as an unsworn witness, "His role

as advocate may give his client an unfair advantage because the

attorney can subtly impart to the jury his firsthand knowledge

of the events without having to swear an oath or be subject to

cross-examination.  When an attorney is an unsworn witness the

detriment is to the government, since the defendant gains an

unfair advantage, and to the Court, since the fact finding

process is impaired.  Waiver by the defendant is ineffective in

curing the impropriety in such situations, since he is not the

party prejudiced," citing *Locasio* 6 F.3d at 933 to 934.

        Where an attorney has become inmeshed in his client's

alleged criminal acts, disqualification has sometimes resulted.

L5BGfinC

See, for example, *United States v. Schlesinger,* 335 F.Supp.2d

379 at 382 (E.D.N.Y. 2004), disqualifying defense lawyer where

the government asserted that it would, "prove that the

defendant's alleged effort to defraud creditors was carried

forward by his use of [the attorney] to reverse a tax

assessment imposed by [the New York State Department of

Taxation and Finance]" and then "as a result [the attorney] may

become an unsworn witness or possibly a sworn witness because

of the [attorney's] unwitting participation in the alleged

fraud."

Also, United States v. Kerik, 531 F. Supp. 2d 610 at

616 (S.D.N.Y. 2008), disqualifying defense counsel where the

defendant was alleged to have "obstructed state investigation

through his lawyer's unwittingly made obstructive statements"

and where the attorney would "either be called as a government

witness or [would] necessarily be an unsworn witness before the

jury in the defendant's trial," close quote.

Also, *United States v. Napoli,* 2010 WL 1687669 at *5,

(E.D.N.Y. April 27th 2010), disqualifying defense counsel where

"the attorney's firsthand knowledge of the events in question

would lend specially and credibility to the arguments he makes

in Napoli's defense.  And the jury may accept [the attorney's]

unsworn testimony about events precisely because he was present

for them."

Now, based on what I have been told about

L5BGfinC

Mr. Griffin's contact with restaurant two's lawyer, it appears
to me that a stipulation could resolve the unsworn witness
problem identified by the government.  The government has
represented that Mr. Griffin was merely a conduit for
information and materials provided by the defendant.  And as I
have said, Mr. Griffin is not alleged to have participated in
any intentional wrongdoing.  Mr. Griffin has also taken the
position that he was merely a conduit for information and
materials provided to restaurant two's lawyer.

As far as I can tell, it matters not whether
Mr. Griffin or some other lawyer passed this information and
materials on to restaurant two's lawyer.  Accordingly, it seems
to me that the parties could reach a stipulation that the name
of the lawyer who passed on the information and materials to
restaurant two's lawyer could not be mentioned at trial.

I'm going to give the parties two weeks to determine
whether they can reach a stipulation as to this issue.  I am
setting a relatively short deadline for that discussion between
the parties because this case has been delayed for more than a
year already, as a result of the conflict issue, and it is
necessary that the case move forward from here expeditiously.
Accordingly, within two weeks' time, the parties will submit a
joint letter to me stating whether they have been able to reach
a stipulation as to how the matter of Mr. Griffin's contact
with restaurant two's lawyer will be addressed at trial.

L5BGfinC

Absent such a stipulation, I will have to revisit the issue of

whether Mr. Griffin's disqualification is necessary, applying

the case law I just referenced.

         I will now turn to the conflict of interest issue.

Even if the parties reach a stipulation that Mr. Griffin will

not be identified as the lawyer who provided information and

materials to restaurant two's lawyer, that will not end the

matter.  I am obligated under the law to make sure that

Mr. Finkelstein understands the potential problems and risks

associated with having Mr. Griffin as his counsel at trial,

given the factual circumstances that I have outlined.  I will

begin with the law governing conflict of interest.  As I noted

a moment ago, quote, "The Sixth Amendment guarantees that in

all criminal prosecutions the accused shall enjoy the right to

have the assistance of counsel for his defense."  Citing

*Schlesinger* 335 F. Supp.2d at 381.  Included in that right is

"the right to be represented by an attorney who is free from

conflicts of interest," citing *United States v. Perez,* 325 F.3d

115 at 125, Second Circuit 2003.  Quote, "A defendant has

suffered ineffective assistance of counsel in violation of the

Sixth Amendment if his attorney has, one, a potential conflict

of interest that resulted in prejudice to the defendant or,

two, an actual conflict of interest that adversely effected the

attorney's performance," close quote.  Citing *United States v.*

*Levy,* 25 F.3d 146 at 152 ,Second Circuit 1994.  Where, as here,

L5BGfinC

1    a court learns of a possible conflict of interest, it must,

2    quote, "investigate the facts and details of the attorney's

3    interests to determine whether the attorney in fact suffers

4    from an actual conflict, a potential conflict or no genuine

5    conflict at all at," Id at 153.  "An attorney has an actual, as

6    opposed to at potential conflict of interest when, during the

7    course of the representation, the attorney's and defendant's

8    interests diverge with respect to a material, factual or legal

9    issue or to a course of action," citing *Perez* 325 F.3d at 125.

10   Quote, "An attorney has a potential conflict of interest if the

11   interests of the defendant may place the attorney under

12   inconsistent duties at some time in the future."  And limited

13   circumstances where the defendant's lawyer was, one, unlicensed

14   or, two, had engaged in the defendant's crimes, a per se rule

15   applies wherein an actual conflict is presumed and the

16   defendant is relieved of the obligation to show that the

17   attorney's conflicts had adverse effects on the attorney's

18   performance, citing *Levy* 25 F.3d at 157.

19           Where the district court determines that the attorney

20   has an actual or potential conflict of interest, it must next

21   determine whether the conflict is disqualifying or waivable, Id

22   at 153.  Quote, "If the court discovers that the attorney

23   suffers from a severe conflict such that no rational defendant

24   would knowingly and intelligently desire the conflicted

25   lawyer's representation, the Court is obliged to disqualify the

L5BGfinC

attorney," end quote.  "If the Court determines that the
attorney suffers from a lesser [actual] or only a potential
conflict, then it may accept a defendant's knowing and
intelligent waiver of his right to conflict-free counsel and
permit the defendant to be represented by the attorney of his
choice," citing *Perez*, 325 F.3d at 125.  Where, as here, an
attorney has some involvement in or connection with acts that
serve as the basis for charges against a defendant, the
attorney's "performance as an advocate can be impaired by his
relationship to the events in question.  For example, the
attorney may be constrained from making certain arguments on
behalf of his client because of his own involvement or may be
tempted to minimize his own conduct at the expense of his
client," citing *Locasio* 6 F.3d 933 to 934, see also Schlesinger
335 F. Supp. 2d at 382 and 384 (disqualifying defense lawyer
noting that counsel might "have a personal interest in
protecting his reputation" that could "influence [him] to
pursue certain representational tactics that favor his own
personal interest or that of his firm, impeding his ability to
effectively represent" the defendant.  Noting that counsel
might "have an incentive to minimize his own involvement in the
alleged criminal activity so that he or other members of his
firm are not called as actual witnesses in this case.")

          District courts "retain discretion to reject knowing
and intelligent waiver when his attorney's conflict jeopardizes

L5BGfinC

1    the integrity of judicial proceedings.  But absent such

2    institutional concerns, courts will not assume too

3    paternalistic an attitude in protecting the defendant from

4    himself [because] the choice remains his," Id at 125 through

5    126.  Indeed, there remains a "presumption in favor of

6    [representation by a defendant's] counsel of choice," citing

7    *United States v. Jones*, 381 F.3d 114 and 119, Second Circuit

8    2004.

9         As I have noted, the government states that there is

10   no reason to believe that Mr. Griffin has any criminal

11   exposure, nor is there any allegation that he is unlicensed.

12   Accordingly, there is no per se conflict of interest, but there

13   is a risk that Mr. Griffin may seek to distance himself of

14   allegations of his client's fraud and obstruction of justice at

15   trial.  And if Mr. Griffin continues as defense counsel, there

16   is the issue about him appearing either as a witness or unsworn

17   witness at trial as to his interactions with restaurant two's

18   lawyer.  Accordingly, it is necessary for me to make sure that

19   Mr. Finkelstein understands the risks and problems associated

20   with continuing with Mr. Griffin as his lawyer.  I will

21   therefore proceed with a *Curcio* hearing to determine whether

22   Mr. Finkelstein is prepared to knowingly and intelligently

23   waive his right to conflict-free representation.

24        Mr. Finkelstein, I will begin with some questions

25   concerning your background as well as your competence to

L5BGfinC

1    consider the conflict of interest issues.

2              How old are you, Mr. Finkelstein?

3              THE DEFENDANT:  Sixty-six, your Honor.

4              THE COURT:  And what is your education?

5              THE DEFENDANT:  My highest level of education was law

6    school, I graduated in '86.

7              THE COURT:  What is your area of practice?

8              THE DEFENDANT:  Predominantly personal injury and some

9    commercial work, in addition to the ADA.

10             THE COURT:  And so you are a litigator?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  You said you graduated in 1986, and so

13   should I assume that you have been in practice for something on

14   the order of 35 years?

15             THE DEFENDANT:  I was admitted December 13th of 1989,

16   your Honor.

17             THE COURT:  So more like 32 years?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  I have to ask you some questions that go

20   to your mental competence.  Have you ever been addicted to any

21   drugs or alcohol or been treated for any addiction?

22             THE DEFENDANT:  No, your Honor, never.

23             THE COURT:  Are you now or have you recently been

24   under the care of any kind of doctor?

25             THE DEFENDANT:  Other than a general practitioner, no.

L5BGfinC

1          THE COURT:  In the past 24 hours, have you taken any

2    drugs, medicine, pills or drunk any alcohol?

3          THE DEFENDANT:  No, your Honor.

4          THE COURT:  And is your mind clear today, and do you

5    understand what is happening?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Now, you are currently represented by

8    Mr. Griffin?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  And you retained him to represent you?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Are you satisfied with Mr. Griffin's

13    representation up to this point?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Mr. Finkelstein, have you retained or had

16    counsel appointed for you in any prior criminal matter?

17          THE DEFENDANT:  Say that again.  I didn't hear that,

18    Judge, I'm sorry.

19          THE COURT:  I asked whether you have yourself retained

20    or had counsel appointed to represent you in connection with

21    another criminal matter?

22          THE DEFENDANT:  No, your Honor.  Not that I know of,

23    no.

24          THE COURT:  You should understand that you have a

25    right to be represented by an attorney who does not suffer from

L5BGfinC

1   any conflict of interest and has undivided loyalty to you.

2          Do you understand that you have that right?

3          THE DEFENDANT:  Yes, I do, your Honor.

4          THE COURT:  You should understand that being

5   represented by a lawyer who has a conflict of interest presents

6   certain risks to you.  I'm going to discuss with you this

7   afternoon some of those risks.  But it's impossible to predict

8   all the risks that a client might face when being represented

9   by a lawyer who has a conflict of interest.  Do you understand

10  that?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Have you discussed with Mr. Griffin this

13  issue about conflict of interest?

14         THE DEFENDANT:  Numerous times, your Honor.  The last

15  time was about two weeks ago.

16         THE COURT:  And have you and Mr. Griffin talked about

17  the fact that he might have firsthand knowledge of certain

18  facts that might be relevant to whether you are guilty of the

19  fraud and obstruction of justice charges against you?

20         THE DEFENDANT:  Your Honor, based upon the letter that

21  I saw from the US attorney's office and my conversations with

22  Mr. Griffin, those documents were --

23         MR. GRIFFIN:  May I just have one moment, Judge.

24         THE COURT:  Yes.

25         (Conferring.)

L5BGfinC

1              THE COURT:  Let me repeat the question.

2              THE DEFENDANT:  Thank you.

3              THE COURT:  So my question was whether you and

4     Mr. Griffin have talked about the fact that he might have

5     firsthand knowledge of certain facts that might be relevant to

6     whether you are guilty of the fraud and obstruction charges

7     against you?

8              THE DEFENDANT:  We absolutely did have numerous

9     conversations.  Yes, your Honor.

10              THE COURT:  Now, here, the government says that

11     Mr. Griffin has firsthand knowledge of efforts that you

12     allegedly made to cancel a hearing regarding a lawsuit you had

13     filed against a restaurant that I have referred to as

14     restaurant two, which alleged violations of the American's with

15     Disabilities Act.  Do you understand the government has

16     asserted that Mr. Griffin has firsthand knowledge?

17              THE DEFENDANT:  Yes.

18              THE COURT:  Now, you have heard what I said today

19     about the case law and ethical rules that do not permit a

20     lawyer to become a witness in a trial, whether sworn or

21     unsworn, you heard me recount the law and the professional

22     rules on that point; right?

23              THE DEFENDANT:  Heard all of it, yes, your Honor.

24              THE COURT:  So if Mr. Griffin does represent you at

25     trial, I cannot permit him to be either a sworn witness -- that

L5BGfinC

is, someone who is called to the witness stand -- or an unsworn

witness, which is to say, someone that appears in front of a

jury and makes personal assertions based on his personal

involvement in the underlying facts.

           You understand I can't permit that to happen?

           THE DEFENDANT:  Yes, I do, your Honor.

           THE COURT:  Now, it's important that you understand

that one of the reasons that I can't warn you about all the

possible risks here is that I don't myself have personal

knowledge about the facts.  But what I can say to you is that

you need to consider whether Mr. Griffin has knowledge of facts

that could be helpful to you if he were able to testify at the

trial.  And you are much better situated to know the answer to

that question than I am.

           Mr. Griffin has represented that he was nothing more

than a conduit for information and documents that were passed

on to restaurant two's lawyer.  And if that is true and he's

just simply a conduit of information, then perhaps he doesn't

have information that could be helpful to you if he were called

to testify at the trial.  But I don't know what Mr. Griffin's

role was.  I only know what the parties have told me.  And I

don't know what Mr. Griffin's personal interactions were with

the lawyer representing this restaurant.  I don't know.  So all

I can do is alert you to the possibility that if you think

Mr. Griffin has information that it would be useful to you to

L5BGfinC

1    have testified to from the witness stand, you need to

2    understand that if he remains as your lawyer, I can't allow him

3    to testify.

4           Do you understand that?

5           THE DEFENDANT:  Yes, your Honor.  Yes.  And I agree

6    with his statement that he was simply a conduit for the

7    information, yes.

8           THE COURT:  And you understand also that I can't

9    permit Mr. Griffin to be an unsworn witness in the case, in the

10   sense that, suppose restaurant two's lawyer testifies from the

11   stand, I can't have Mr. Griffin inserting himself into the

12   cross-examination by saying things like, well, that's not what

13   you told me or that's not the way I remember it, et cetera, et

14   cetera.  I can't do that, because then he's operating as an

15   unsworn witness.  He's essentially testifying in front of a

16   jury, he's not under oath, and that's just not fair.

17          You understand that?

18          THE DEFENDANT:  Yes, sir.  I do, your Honor.

19          THE COURT:  Now, as I suggested a moment ago, there is

20   a possibility that because of Mr. Griffin's contact with

21   restaurant two's lawyer, that might cause him, either

22   consciously or subconsciously, to limit or hinder certain

23   things he otherwise would do; steps, actions or arguments he

24   otherwise might make or take on your behalf.  And it could

25   affect the advice he might otherwise give you.  And one example

L5BGfinC

1  of this would be the possibility that Mr. Griffin might be less

2  likely to recommend arguing that you relied on his advice when

3  responding to the allegations of fraud or it's possible that he

4  might take steps to distance himself from your conduct, for

5  example, in connection with restaurant two's lawyer.

6          Do you understand there is that possibility?

7          THE DEFENDANT:  Yes, your Honor.  I have no concerns

8  about it.

9          THE COURT:  Mr. Griffin's personal involvement might

10  also, consciously or subconsciously, affect the types of

11  questions that he asks witnesses, including restaurant two's

12  lawyer.

13          Do you understand that there is that possibility?

14          THE DEFENDANT:  Yes, sir, I do.

15          THE COURT:  Mr. Griffin's personal involvement might

16  also impact the advice he gives you about whether to plead

17  guilty or to go to trial, either consciously or subconsciously.

18          You understand there is that possibility?

19          THE DEFENDANT:  Yes, your Honor.  I'm not concerned.

20          THE COURT:  Now, as I have tried to make clear, these

21  are only examples of how it's possible that Mr. Griffin's

22  advice to you might be affected by his personal involvement.

23  As I have said, we cannot predict every way that Mr. Griffin's

24  personal involvement in this case might affect his

25  representation of you.

L5BGfinC

1          Do you understand that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Mr. Finkelstein, do you have any questions

4   for me about this conflict of interest issue?

5          THE DEFENDANT:  No, your Honor.

6          THE COURT:  So you have an important decision to make

7   in deciding whether you want to proceed with Mr. Griffin as

8   your lawyer.  I'm going to ask you to take some time to think

9   about it.  I urge you to speak with another lawyer about this

10  conflict of interest issue, a lawyer with expertise in criminal

11  law.  I will schedule another conference about 30 days out to

12  discuss whether the disqualification issue has been resolved

13  and to determine whether you wish to proceed with Mr. Griffin

14  as your counsel.  If so, I will have some more questions for

15  you at that time.

16         Now, let me give the lawyers an opportunity to say

17  anything they want either about the disqualification issue or

18  the conflict of interest issue.  Is there anything the

19  government wishes to add?

20         MS. BHASKARAN:  Not at this time, your Honor.

21         THE COURT:  Mr. Griffin, anything else you want to say

22  on those two subjects?

23         MR. GRIFFIN:  No, thank you.  Judge, you have covered

24  it.

25         THE COURT:  Let me inquire of the government, where

L5BGfinC

1    are we in terms of discovery in this case?

2               MS. BHASKARAN:  Certainly, your Honor, the government

3    has already started to produce discovery to the defendant.

4    Last week, we made one substantial production.  I would say

5    that the discovery in this matter is on the more voluminous

6    side of the spectrum, in part because the government seized

7    several email accounts and electronic devices with potentially

8    responsive material on it.  I'd note, for context, that the far

9    majority of those email accounts and devices were devices that

10   were seized from the defendant.  We've been in discussions with

11   Mr. Griffin about producing and providing all this material to

12   the defendant.  Once we receive a hard drive, we'll be in a

13   position to provide many of the email accounts in their

14   entirety, as well as the electronic devices.

15              In addition, with respect to our responsive review,

16   we've completed the responsive review of the email accounts,

17   and we're in the process of working with our vendor to get that

18   material to the defendant.  I expect that he'll probably have

19   that, assuming we get the hard drive, within the next week or

20   so.  With respect to the responsiveness review for the devices,

21   that review is ongoing.  It's a little bit more cumbersome

22   because all of those materials have to go through a filter team

23   before they can be released to the prosecution team.  In an

24   effort to move this case along expeditiously, given the amount

25   of time that it's been pending, I've had discussions with

L5BGfinC

1   Mr. Griffin to see whether there's a way that we can streamline

2   some of the privilege review by, for example, a limited waiver

3   of attorney work product so that the government can quickly

4   identify any responsive material from the electronic devices.

5   With that said, it is our hope that we should complete our

6   responsiveness review for the electronic devices within the

7   next two or three months.  But having said that, the entirety

8   of those devices, except for one, will be soon provided to the

9   defendant in its entirety.

10          THE COURT:  So at the conference we're going to have

11  in about 30 days, we'll get an update on where the parties are

12  in terms of discovery.

13          Mike, we're looking for another date, approximately 30

14  days out.

15          THE DEPUTY CLERK:  June 11th at 10:00 a.m. is

16  available, your Honor, which is a Friday.

17          THE DEFENDANT:  I'm out of town.

18          THE DEPUTY CLERK:  I understand you're out of town?

19          THE DEFENDANT:  Yes, yes.  The week after would be

20  great, week or two.

21          THE DEPUTY CLERK:  The following Friday, the 18th at

22  10:00 a.m.

23          THE COURT:  Is that okay with everybody, June 18th,

24  10:00 a.m?

25          MR. GRIFFIN:  Yes, your Honor.

L5BGfinC

1          Mr. Finkelstein does reside in Florida.  Would the

2     Court allow the proceeding to be virtual, this way he doesn't

3     have to fly up and go through the process of that again?

4          THE COURT:  I understand that, but I will tell you

5     that until we resolve the issue of representation, I'm very

6     uncomfortable doing it remotely.  Certainly, for purposes of

7     scheduling conferences that we might have down the road, I

8     don't think it's necessary for Mr. Finkelstein to fly up here

9     every time.

10          THE DEFENDANT:  Thank you.

11          THE COURT:  But until we sort out this issue of

12     representation, I want to be able to see him face to face and

13     talk through these issues, so my hope is that when we're

14     together on June 18th, the issue will be resolved then.  But

15     until it's resolved, I want the conferences to be face to face.

16          MR. GRIFFIN:  We understand, Judge, certainly.

17          MS. BHASKARAN:  Your Honor, with apologies, I

18     personally will be out of town on the 18th, and I'm the sole

19     assistant on this case.  I'm available early that week on the

20     Monday or Tuesday or any time the week after.

21          THE COURT:  How are we that Monday or Tuesday?  Is the

22     15th available?

23          THE DEPUTY CLERK:  The 15th, 10:00 a.m. is available.

24          THE COURT:  Is that okay with everybody?  I don't have

25     a calendar in front of me.

L5BGfinC

| | |
|---|---|
| 1 | THE DEFENDANT:  Your Honor, the 16th? |
| 2 | MS. BHASKARAN:  Again, with apologies, I will be out |
| 3 | of town the 16th, 17th and 18th. |

THE COURT:  I guess we're looking at the following
week, then.

THE DEPUTY CLERK:  22nd, 11:00 a.m.

THE COURT:  How is that for the government, June 22nd,
11:00 a.m.?

MS. BHASKARAN:  That works for the government, your
Honor.

MR. GRIFFIN:  That works for the defense.

THE COURT:  So we will have our next conference
June 22nd at 11:00 a.m.

Does the government wish for me to exclude time
between then and now?

MS. BHASKARAN:  Yes, your Honor, to permit the defense
to begin to review the discovery and to allow the defense to
resolve the outstanding issue with respect to Mr. Griffin's
representation in this matter.

THE COURT:  Any objection, Mr. Griffin?

MR. GRIFFIN:  None, Judge.

THE COURT:  I will exclude time between today and
June 22nd, 2021 under the Speedy Trial Act pursuant to Title 18
United States Code §3161(h)(7)(A) to permit the government to
make discovery and for the defendant to begin preliminary

L5BGfinC

1    review and also for purposes of working out the representation

2    issues that we've discussed today.  I do find that the ends of

3    justice served by granting this continuance outweigh the best

4    interests of the public and the defendant in a speedy trial.

5         Is there anything else from the government?

6         MS. BHASKARAN:  Yes, your Honor, very briefly.  The

7    government had submitted a protective order to govern discovery

8    in this matter.  It has not yet been entered by the Court, and

9    we started to produce discovery, but we would appreciate the

10   Court's consideration of that order.

11        THE COURT:  Mr. Griffin, did you have any objection to

12   the government's proposed protective order?

13        MR. GRIFFIN:  No.  I went over it with

14   Mr. Finkelstein, and we sent back to the government a response

15   that we approved.

16        THE COURT:  Ms. Bhaskaran, we will find that proposed

17   protective order and execute it.

18        MS. BHASKARAN:  Thank you, your Honor.

19        MR. GRIFFIN:  Judge, the other thing we had done --

20   and I don't want to trouble this Court -- we had asked when he

21   was arraigned, Mr. Finkelstein's daughter is graduating college

22   in Tallahassee, Florida, and believe it or not, he is limited

23   to the Southern District of Florida.  So we had put forth a

24   letter to the magistrate court, we just didn't get a response.

25   The government does consent to him traveling.  May I put that

L5BGfinC

1    to your Honor now or would you like a letter from me?

2              THE COURT:  I'm going to grant the application.  The

3    easiest thing would be if you just sent me a one line letter

4    saying that, and I'll endorse it.

5              MR. GRIFFIN:  Thank you, Judge.  We appreciate that.

6              THE COURT:  That will be the end of it.

7              THE DEFENDANT:  Thank you, your Honor.

8              THE COURT:  If there's nothing else.  I wish you all a

9    good day.

10             (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25