UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- against -

STUART FINKELSTEIN,

Defendant.

**ORDER**

21 Cr. 217 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Defendant Stuart Finkelstein is charged with mail fraud, aggravated identity theft,

obstruction of justice, and filing false declarations in connection with a lawsuit filed in this

District.  (See Indictment (Dkt. No. 35))  The Government has moved to disqualify the

Defendant's lawyer, Brian Griffin, because he is a potential witness at trial.  (May 25, 2021

Govt. Ltr. (Dkt. No. 49))

For the reasons stated below, the Government's motion to disqualify Griffin will

be granted.

## BACKGROUND

I.     FACTS

Defendant Finkelstein is a lawyer whose practice includes representing plaintiffs

suing for violations of the Americans with Disabilities Act ("ADA").  These actions are typically

brought against defendants who operate businesses that are allegedly not in compliance with the

ADA.  The Government charges that the Defendant stole the identities of two individuals in

order to file fraudulent ADA lawsuits in this District.  (Indictment (Dkt. No. 35); May 4, 2021

Govt. Ltr. (Dkt. No. 44) at 1-2)

According to the Government, in early 2019, a newspaper published an article asserting that the Defendant was filing fraudulent ADA lawsuits. At about this time, the Defendant retained Brian Griffin to represent him, including in connection with fraud allegations made in connection with lawsuits that the Defendant had filed on behalf of an individual whom the Government refers to as "Victim-2." (May 4, 2021 Govt. Ltr. (Dkt. No. 44) at 1-2)

In February 2019, one of the restaurants the Defendant had sued under the ADA – an entity that the Government refers to as "Restaurant-2" – requested court intervention to determine whether the lawsuit the Defendant had filed against it – which Restaurant-2 had settled – was fraudulent. The court ordered the Defendant and Victim-2 to appear for a hearing. In response, the Defendant allegedly directed Griffin to tell Restaurant-2's lawyer that Defendant would return a portion of the settlement money if Restaurant-2 withdrew its request for court intervention. (Id. at 2) The Government contends that Griffin was the unwitting conduit of misleading information supplied by the Defendant to Restaurant-2's lawyer – information that the Defendant was providing to Restaurant-2's lawyer as part of an alleged scheme to obstruct justice. (Feb. 11, 2020 Govt. Ltr. (Dkt. No. 45) at 2; May 4, 2021 Govt. Ltr. (Dkt. No. 44) at 1-2; May 25, 2021 Govt. Ltr. (Dkt. No. 49); see also Indictment, Count Three (Dkt. No. 35))

The Government alleges that "at some prior to April 30, 2019," Mr. Griffin – at the Defendant's direction – transmitted certain documents, including phone records, bank records, and a photograph to Restaurant-2's lawyer. The Government does not contend that the documents Griffin supplied to Restaurant-2's lawyer were falsified. "Rather, the Government's view is that the inference urged by the [D]efendant on the basis of those [d]ocuments – that Victim-2 authorized the lawsuits – is not true." (May 4, 2021 Govt. Ltr. (Dkt. No. 44) at 2) According to the Government, Griffin represented to Restaurant-2's lawyer that the documents

the Defendant had supplied demonstrate that Vicitm-2 had authorized the lawsuit against

Restaurant-2.  (Id.)  In response, Restaurant-2's lawyer withdrew the request for court

intervention.  (Feb. 11, 2020 Govt. Ltr. (Dkt. No. 45) at 2)

## II.     PROCEDURAL HISTORY

On November 12, 2019, the Government filed a criminal complaint against the

Defendant charging him with mail fraud, aggravated identity theft, obstruction of justice, and

filing false declarations with a court.  (Crim. Cmplt. (Dkt. No. 1))

On January 23, 2020, the Government submitted a notice of intent to file an

information.[1]  (Dkt. No. 36)

In a February 11, 2020 letter, the Government asserted that Mr. Griffin has a

potential conflict of interest and requested a hearing to discuss the conflict, pursuant to United

States v. Curcio, 680 F.2d 881 (2d Cir. 1982).  (Feb. 11, 2020 Govt. Ltr. (Dkt. No. 45))  In its

letter, the Government asserted that the conflict was waivable for purposes of pretrial

proceedings, but asked that the waiver "be limited only to pretrial proceedings or a pretrial

resolution of the case," and that the conflict issue "be reexamined if the case proceeds to trial."

(Id. at 1)

A Curcio hearing was initially scheduled for March 4, 2020, but it was repeatedly

postponed due to the COVID-19 pandemic.[2]  After repeated adjournments, the Court scheduled a

Curcio hearing for May 11, 2021.  (Dkt. No. 33)

In May 4, 2021 letters, the Government and the Defendant advised the Court that

the Defendant had rejected the Government's plea offer and intends to proceed to trial.  (May 4,

---

[1]  The notice is dated January 23, 2020, but it was not filed until March 31, 2021, when the case
was assigned a criminal docket number.
[2]  The Defendant resides in the Southern District of Florida.  (Bail Disposition (Dkt. No. 5))

2021 Govt. Ltr. (Dkt. No. 44) at 4-5; May 4, 2021 Def. Ltr. (Dkt. No. 43) at 1)[3]  In its letter, the

Government states that the Court should consider whether Mr. Griffin's disqualification is

necessary, because his communications with Restaurant-2's attorney will be introduced at trial in

connection with the obstruction of justice count.  These circumstances present a possibility that

Griffin might be called to testify, or become an unsworn witness.  (See May 4, 2021 Govt. Ltr.

(Dkt. No. 44) at 2, 4-5)

       The Court conducted a Curcio hearing on May 11, 2021, and advised the

Defendant of, inter alia, his right to conflict-free counsel and the risks attendant to Mr. Griffin's

continued representation of him.  (May 11, 2021 Hearing Tr. (Dkt. No. 51) at 15, 17-23)

Acknowledging that the Government intends to offer evidence of Mr. Griffin's communications

with Restaurant-2's lawyer, the Court directed the parties to discuss whether a stipulation could

be reached concerning Griffin's communications with the lawyer, in which there would be no

reference to Griffin.  The Court instructed the parties to submit a letter in two weeks' time

reporting on the outcome of their discussions.  (See id. at 11)

       In May 25, 2021 letters, the parties report that they cannot reach a stipulation as to

Mr. Griffin's communications with Restaurant 2's lawyer.  (May 25, 2021 Govt. Ltr. (Dkt. No.

49); May 25, 2021 Def. Ltr. (Dkt. No. 50)).

       The Government states that

> there is a dispute concerning the nature of the discussions that took place between
> Mr. Griffin and [Restaurant-2's lawyer]. . . . The Government believes that this
> dispute could bear on the jury's determination as to whether those discussions
> were merely routine civil settlement discussions, as the defense has argued, or an
> effort by Mr. Finkelstein to obstruct justice, as the Government submits.  Only
> Mr. Griffin and [Restaurant-2's attorney] were privy to these discussions.

---

[3]  On March 31, 2021, the Government obtained an indictment against the Defendant, charging
him with mail fraud, aggravated identity theft, obstruction of justice, and filing false declarations
in this District.  (See Indictment (Dkt. No. 35))

Therefore, for the defense to advance its theory, Mr. Griffin would have to testify on his client's behalf, and/or Mr. Griffin would have to cross-examine [Restaurant-2's lawyer] on the basis of Mr. Griffin's personal recollections of those conversations.  In either case, Mr. Griffin would become a sworn or unsworn witness whose disqualification, in the Government's view, would become necessary.  See United States v. Locascio, 6 F.3d 924, 933 (2d Cir. 1993); United States v. Kliti, 156 F.3d 150, 156 (2d Cir. 1998).

Because the parties cannot reach a stipulation, the Government respectfully submits that the Court should disqualify Mr. Griffin from his representation of the defendant.

(Id.)

In Mr. Griffin's May 25, 2021 letter, he confirms that the parties were not able to "stipulate to the issues surrounding [his] representation of Mr. Finkelstein[] in his civil matter as it relates to his criminal trial."  Mr. Griffin likewise reports that "there are disagreements regarding [his] specific involvement with [Restaurant-2's lawyer] as it relates to the obstruction of justice count."  (May 25, 2021 Def. Ltr. (Dkt. No. 50))  Griffin asks this Court to "render a decision as to whether [he] may proceed as trial counsel . . . before deciding on the balance of the Curcio hearing."  (Id.)

## DISCUSSION

### I.   LEGAL STANDARDS

While the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," U.S. Const. amend. VI, a defendant "does not have an absolute right to counsel of [his] own choosing." United States v. Locasio, 6 F.3d 924, 931 (2d Cir. 1993) (citing Wheat v. United States, 486 U.S. 153, 159 (1988)).  Moreover,

although a criminal defendant can waive [his] Sixth Amendment rights in some circumstances, that right to waiver is not absolute, since "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." . . . The question of disqualification therefore implicates not

only the Sixth Amendment right of the accused, but also the interests of the courts
in preserving the integrity of the process and the government's interests in
ensuring a just verdict and a fair trial.

Id. (quoting Wheat, 486 U.S. at 160).

Rules of professional conduct and case law limit the circumstances in which an

attorney acting in a representative capacity may be a witness at trial, whether sworn or unsworn.

The Second Circuit has instructed that, "[w]hen faced with an attorney as a sworn or unsworn

witness, the proper recourse is to disqualify the attorney, not to exclude the testimony." United

States v. Kliti, 156 F.3d 150, 156 (2d Cir. 1998).

New York Rule of Professional Conduct 3.7(a) provides:

A lawyer shall not act as an advocate before a tribunal in a matter in which the
lawyer is likely to be a witness on a significant issue of fact unless:

 (1) the testimony relates solely to an uncontested issue;

 (2) the testimony relates solely to the nature and value of legal services
  rendered in the matter;

 (3) disqualification of the lawyer would work substantial hardship on the
  client;

 (4) the testimony will relate solely to a matter of formality, and there is no
  reason to believe that substantial evidence will be offered in opposition to
  the testimony; or

 (5) the testimony is authorized by the tribunal.

N.Y. Rule of Prof. Conduct 3.7(a).

Even where a lawyer will not be called to testify, he or she may be disqualified if

the lawyer "is in a position to be [an unsworn] witness[.]" Locascio, 6 F.3d at 933. "An attorney

acts as an unsworn witness when his relationship to his client results in his having first-hand

knowledge of the events presented at trial." Id. For example, "[i]f counsel were to cross-

examine [a] witness as to her conversations with him, argue the credibility of her testimony to

the jury, or suggest alternative interpretations of her account of the conversation, he would place

himself in the position of an unsworn witness and implicitly put his own credibility at issue."

United States v. McKeon, 738 F.2d 26, 35 (2d Cir. 1984).

> Where an attorney acts as an unsworn witness,
>
> his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination. . . . When an attorney is an unsworn witness, . . . the detriment is to the government, since the defendant gains an unfair advantage, and to the court, since the factfinding process is impaired. Waiver by the defendant is ineffective in curing the impropriety in such situations, since he is not the party prejudiced.

Locascio, 6 F.3d at 933-34 (citing McKeon, 738 F.2d at 34-35; United States v. Cunningham,

672 F.2d 1064, 1075 (2d Cir. 1982); United States v. Castellano, 610 F. Supp 1151, 1167

(S.D.N.Y. 1985)).

Courts in this Circuit have disqualified attorneys where they have become

enmeshed in their clients' alleged criminal acts.  See, e.g., United States v. Napoli, No. 10-CR-

150(JG), 2010 WL 1687669, at *5 (E.D.N.Y. Apr. 27, 2010) (disqualifying defense counsel

where the attorney's "firsthand knowledge of the events in question would lend special weight

and credibility to the arguments he makes in Napoli's defense"; noting that "the jury may accept

[the attorney's] 'unsworn testimony' about events precisely because he was present for them");

United States v. Kerik, 531 F. Supp. 2d 610, 613, 615 (S.D.N.Y. 2008) (disqualifying defense

counsel where the defendant was alleged to have "obstructed [a] state investigation through his

lawyers' unwittingly-made obstructive statements[,]" and where the attorney would "either be

called as a Government witness or [would] necessarily be an unsworn witness before the jury in

the Defendant's trial"); United States v. Schlesinger, 335 F. Supp. 2d 379, 382 (E.D.N.Y. 2004)

(disqualifying defense lawyer where the Government asserted that it would "prove that [the

defendant's] alleged effort to defraud creditors was carried forward by his use of [the attorney] to reverse [a] tax assessment imposed by [the New York State Department of Taxation and Finance]," and that, "[a]s a result, the . . . [attorney] may become an unsworn witness or possibly a sworn witness because of [the attorney's] 'unwitting' participation in the alleged fraud").

## II.   ANALYSIS

Count Three of the Indictment charges that the Defendant obstructed justice in that he

> offered to return a portion of a settlement payment, and made materially false representations to the attorney of a restaurant FINKELSTEIN sued, in order to cause that attorney to withdraw a motion pending in the United States District Court for the Southern District of New York.

(Indictment (Dkt. No. 35) ¶ 3) (emphasis in original)  As discussed above, the Government contends that Mr. Griffin was the unwitting conduit of the false and misleading information that the Defendant allegedly supplied to Restaurant-2's lawyer in an effort to induce the lawyer to withdraw a motion seeking judicial intervention regarding a settlement.  (Feb. 11, 2020 Govt. Ltr. (Dkt. No. 45) at 2; May 4, 2021 Govt. Ltr. (Dkt. No. 44) at 1-2; May 25, 2021 Govt. Ltr. (Dkt. No. 49); see also Indictment, Count Three (Dkt. No. 35))

In response to the Government's May 4, 2021 letter suggesting that disqualification might be necessary (May 4, 2021 Govt. Ltr. (Dkt. No. 44) at 2, 4-5), Mr. Griffin argued that "there is no danger that [he] would become an unsworn witness to any facts as to which testimony might properly be elicited at trial," because he only "deliver[ed] . . . documents to [Restaurant-2's lawyer] . . . for purposes of settlement negotiations[,]" which "does not lead to the conclusion that [he] has any firsthand knowledge about the contents of those documents or of the underlying relationship between Mr. Finkelstein and [Restaurant 2's lawyer]."  (May 4, 2021 Def. Ltr. (Dkt. No. 43) at 3-4).  Mr. Griffin further argued that his transmission "of documents

[to Restaurant-2's lawyer] alone is an immaterial fact," and "no further relevant or admissible testimony on this point would be properly elicited by calling [him] to the stand."  (Id.)

Based on these assertions, it appeared to the Court that a stipulation might be reached concerning the information and documents Mr. Griffin provided to Restaurant-2's lawyer.  Such a stipulation would render unnecessary any disclosure that Mr. Griffin had provided these materials to Restaurant-2's lawyer.  (See May 11, 2021 Hearing Tr. (Dkt. No. 51) at 11)

When the parties attempted to reach a stipulation concerning Mr. Griffin's communications with Restaurant-2's lawyer, however, it became clear to both sides that a factual dispute exists as to "the nature of the discussions that took place between Mr. Griffin and [Restaurant-2's lawyer]."  (May 25, 2021 Govt. Ltr. (Dkt. No. 49) at 1; see also May 25, 2021 Def. Ltr. (Dkt. No. 50) (stating that "there are disagreements regarding [Griffin's] specific involvement with [Restaurant-2's lawyer] as it relates to the obstruction of justice count").

In particular, Mr. Griffin has represented that Restaurant-2's lawyer – who had initially requested a hearing as to whether the lawsuit brought against the lawyer's client was fraudulent – later "indicated that he would prefer to settle the matter."  (May 4, 2021 Def. Ltr. (Dkt. No. 43) at 2)  According to the Government, however, Mr. Griffin told Restaurant-2's lawyer that the Defendant would "give back some of the settlement money from the lawsuit if Restaurant-2 withdrew its request for a hearing."  (May 4, 2021 Govt. Ltr. (Dkt. No. 44) at 2)

It is clear that Mr. Griffin's communications with Restaurant-2's lawyer lie at the heart of the alleged obstruction of justice charged in Count Three.  Moreover, there is no dispute that Mr. Griffin has first-hand knowledge of – indeed was an unwitting participant in – communications that the Government contends constitute obstruction of justice.  (May 4, 2021

Def. Ltr. (Dkt. No. 43) at 3-4)  Given that the parties now agree that there is a factual dispute

concerning the nature of Mr. Griffin's communications with Restaurant-2's lawyer (see May 25,

2021 Govt. Ltr. (Dkt. No. 49) at 1; May 25, 2021 Def. Ltr. (Dkt. No. 50)), it appears likely that

Mr. Griffin will be a sworn witness at trial, or an unsworn witness in the event that he represents

the Defendant at trial.  See McKeon, 738 F.2d at 35 ("If counsel were to cross-examine the

witness as to her conversation with him, argue the credibility of her testimony to the jury, or

suggest alternative interpretations of her account of the conversation, he would place himself in

the position of an unsworn witness and implicitly put his own credibility at issue.").

        As discussed above, where an attorney acts as an unsworn witness, "[w]aiver by

the defendant is ineffective in curing the impropriety," because "the detriment is to the

government, since the defendant gains an unfair advantage, and to the court, since the factfinding

process is impaired."  Locascio, 6 F.3d at 934.  Here, Mr. Griffin's

> questions during cross-examination [of Restaurant-2's lawyer] may be afforded
> undue credibility because he has first-hand knowledge of the statements and
> events about which [Restaurant-2's lawyer] would likely be questioned.
> Moreover, should Mr. [Griffin] disagree with any of [Restaurant-2's lawyer's]
> characterizations of the events surrounding the statements, he will either be forced
> to sit quietly in detriment to his client or (without taking an oath or being cross-
> examined) to ask questions to which the jury may assign undue weight.  In either
> case, the risk of prejudice to the Defendant or the Government is too great, and
> places in jeopardy the integrity of the proceeding.

Kerik, 531 F. Supp. 2d at 616.

        Accordingly, Mr. Griffin cannot serve as Defendant's counsel at trial.

## CONCLUSION

For the reasons stated above, the Government's motion to disqualify Brian J.

Griffin as defense counsel (Dkt. No. 49) is granted.

Dated: New York, New York
         June 22, 2021                                SO ORDERED.

                                                     Paul G. Gardephe
                                                     United States District Judge

11