M7cWfinP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                            21 Cr. 217 (PGG)(JLC)

STUART FINKELSTEIN,

            Defendant.
                             Plea (by telephone)
------------------------------x

                             New York, N.Y.
                             July 12, 2022
                             12:00 p.m.

Before:

                  HON. JAMES L. COTT,

                             U.S. Magistrate Judge

                    APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  RUSHMI BHASKARAN
     Assistant United States Attorney

DAVID K. BERTAN
     Attorney for Defendant

1          (Case called)

2          MS. BHASKARAN:  Good afternoon, your Honor.  Rushmi

3  Bhaskaran for the United States.

4          THE COURT:  Good afternoon, Ms. Bhaskaran.

5          MR. BERTAN:  David Bertan appearing for

6  Mr. Finkelstein.

7          THE COURT:  Good afternoon, Mr. Bertan.

8          And good afternoon, Mr. Finkelstein.

9          MR. BERTAN:  Good afternoon, your Honor.

10          THE COURT:  Mr. Finkelstein, are you able to hear me

11  all right?

12          THE DEFENDANT:  Yes, I am.  Thank you, your Honor.

13          THE COURT:  All right.  If at any time you can't hear

14  me or any of the lawyers, please interrupt the proceeding and

15  tell me.  All right?

16          THE DEFENDANT:  Thank you.  Appreciate it.

17          THE COURT:  Also, if at any time you wish to consult

18  with Mr. Bertan privately, also please tell me that and we can

19  make arrangements to move you to a separate line on this

20  telephone conference.  All right?

21          THE DEFENDANT:  Wonderful.  Thank you, your Honor.

22          THE COURT:  All right.

23          I note for the record that all parties are, in fact,

24  appearing by telephone, so before any person speaks, please be

25  sure to identify yourself by name so the record is clear.

1          Our teleconference line is open to the public on a

2     listen-only basis.  If you are a member of the public, please

3     mute your line and keep it on mute.

4          Please also be aware that any recording or

5     dissemination of the audio of these proceedings is prohibited.

6          As everyone knows, we remain in the midst of the

7     COVID-19 pandemic, and I am conducting this proceeding by

8     telephone based on the authority provided by a federal law

9     known as the CARES Act and the standing orders issued by the

10    chief judge of this court pursuant to that act.  Under that

11    act, I find that videoconferencing is not reasonably available

12    at this time to conduct this proceeding.

13         In addition, under the CARES Act, in the case of any

14    plea conducted by videoconference or telephone, the district

15    judge to whom the case is assigned must determine whether this

16    proceeding cannot be further delayed without serious harm to

17    the interest of justice.  Judge Gardephe, the assigned district

18    judge in this case, issued an order dated July 11, in which he

19    made this determination.

20         Mr. Bertan, did you discuss with Mr. Finkelstein

21    whether he is, in fact, willing to consent to proceed with his

22    guilty plea today by telephone?

23         MR. BERTAN:  Yes, I have, and he is willing.

24         THE COURT:  And did you explain to him that he does

25    have a right to be present in court?

1          MR. BERTAN:  Yes.

2          THE COURT:  Mr. Finkelstein, in an abundance of

3   caution, let me just confirm that with you.  Do you understand

4   that you do have a right to be physically present in court for

5   this plea proceeding today?

6          THE DEFENDANT:  I do, your Honor.

7          THE COURT:  And are you willing to consent to proceed

8   with this plea proceeding by telephone at this time?

9          THE DEFENDANT:  I do, your Honor.

10          THE COURT:  All right.

11          Do counsel believe any further record need be made

12   with respect to proceeding by telephone, or is the record

13   sufficient?

14          Ms. Bhaskaran.

15          MS. BHASKARAN:  Thank you, your Honor.

16          Your Honor, if you could kindly confirm with defense

17   counsel that Judge Gardephe's interest of justice finding in

18   his July 11 order is sufficient to satisfy the CARES Act

19   standard.

20          THE COURT:  Mr. Bertan, I believe you submitted the

21   order to Judge Gardephe, and is that order satisfactory, as

22   Ms. Bhaskaran just asked?

23          MR. BERTAN:  Yes, it is, your Honor.

24          THE COURT:  All right.

25          Anything further in that regard, Ms. Bhaskaran?

1      MR. BERTAN:  No, your Honor.  Thank you.

2      THE COURT:  All right.

3      Anything else, Mr. Bertan, you think we need to state

4  preliminarily as far as how we're proceeding today?

5      MR. BERTAN:  No, your Honor.  I think that satisfies

6  it.

7      THE COURT:  OK.

8      Let me then begin by noting that I have before me a

9  consent to proceed before a United States magistrate judge on a

10  felony plea allocution that has Mr. Finkelstein's signature on

11  it.

12      What this form says, Mr. Finkelstein, is that knowing

13  you have the right to have your plea taken by a United States

14  district judge, you are nonetheless agreeing to have the plea

15  taken today by a United States magistrate judge.  Is that

16  correct?

17      THE DEFENDANT:  Yes, sir.  Correct.

18      THE COURT:  Before you signed the form, did Mr. Bertan

19  explain this to you?

20      THE DEFENDANT:  Yes, your Honor.

21      THE COURT:  All right.  I will sign the consent form,

22  and we will proceed.

23      Now, the purpose of this proceeding today,

24  Mr. Finkelstein, is to make sure you understand your rights, to

25  make sure that you're pleading guilty of your own free will and

1    to make sure you are pleading guilty because you are guilty and

2    not for some other reason.

3              Do you understand that?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  If at any time you don't understand any of

6    the questions I'll be asking you or if you wish to consult with

7    Mr. Bertan, as I said, please let me know, because it is

8    important that you understand every question before you answer.

9    OK?

10             THE DEFENDANT:  I understand.  Thank you.

11             THE COURT:  Now, before I take your plea, I must ask

12   you a series of questions, as I said, and therefore, I need to

13   place you under oath.

14             So I ask you, do you swear that the answers that you

15   will give to my questions will be the truth, the whole truth,

16   and nothing but the truth, so help you God?

17             THE DEFENDANT:  Yes, I do, your Honor.

18             THE COURT:  Do you understand that any statements you

19   make here today under oath may be used against you in a

20   prosecution for perjury or for making false statements if you

21   do not tell the truth?

22             THE DEFENDANT:  I understand.

23             THE COURT:  Will you please tell the Court your full

24   name?

25             THE DEFENDANT:  Stuart, S-T-U-A-R-T, Finkelstein,

1  F-I-N-K-E-L-S-T-E-I-N.

2          THE COURT:  How old are you, Mr. Finkelstein?

3          THE DEFENDANT:  57, your Honor.

4          THE COURT:  Are you a citizen of the United States?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Are you able to read and write in English?

7          THE DEFENDANT:  Yes.

8          THE COURT:  How far did you go in school?

9          THE DEFENDANT:  Got my juris doctorate in '86.

10          THE COURT:  Are you now or have you recently been

11  under the care of a doctor or a psychiatrist for any reason?

12          THE DEFENDANT:  General practitioner, orthopedist, but

13  not -- yeah.

14          THE COURT:  OK.  You're not being treated for any

15  condition that might have an impact on your ability to see,

16  hear, think, reason, understand, or make decisions, are you?

17          THE DEFENDANT:  No, I'm not.

18          THE COURT:  OK.  Have you been treated recently for

19  any mental illness or addiction to alcohol or narcotic drugs of

20  any kind?

21          THE DEFENDANT:  No, your Honor.

22          THE COURT:  As you sit here today, are you under the

23  influence of any mind-altering drug or any alcoholic drink?

24          THE DEFENDANT:  No, I'm not, your Honor.

25          THE COURT:  Are you on any medication?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Is the medication you're taking anything

3     that could impact your ability to understand or make decisions?

4          THE DEFENDANT:  No.

5          THE COURT:  Have you been able to understand

6     everything that I've said to you so far today?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Do you feel all right today?

9          THE DEFENDANT:  I'm sorry.  I'm not laughing at you,

10    Judge.  I'm laughing -- not -- yeah, I'm OK, your Honor.  Thank

11    you much.

12         THE COURT:  OK.  You feel well enough to proceed with

13    this legal proceeding is really the question.

14         THE DEFENDANT:  Yes, I do, Judge.

15         THE COURT:  OK.

16         Have you seen a copy of the indictment in this case?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Have you read it?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Do you understand what it says that you

21    did?

22         THE DEFENDANT:  Do I understand what?  You got cut

23    out.  I'm sorry.

24         THE COURT:  Do you understand what the indictment says

25    that you did?

M7cWfinP

1    THE DEFENDANT:  Yes.

2    THE COURT:  Have you had a chance to discuss the

3 charges in the indictment and how you wish to plead with Mr.

4 Bertan?

5    THE DEFENDANT:  Yes, your Honor.

6    THE COURT:  Are you satisfied with his representation

7 of you?

8    THE DEFENDANT:  Yes, your Honor.

9    THE COURT:  Have you had a full opportunity to discuss

10 this case with him?

11    THE DEFENDANT:  Yes, I have.

12    THE COURT:  And has he told you the consequences of

13 pleading guilty?

14    THE DEFENDANT:  Yes.

15    THE COURT:  Are you ready to enter a plea at this

16 time?

17    THE DEFENDANT:  Yes.

18    THE COURT:  My understanding is you'll be pleading

19 guilty to Count One of the indictment, so let me review the

20 charge in Count One and the penalties that are associated with

21 that charge with you at this time.

22    Count One charges you with mail fraud, in violation of

23 federal law, and carries a maximum term of imprisonment of 20

24 years; a maximum term of supervised release of three years; a

25 maximum fine pursuant to federal law of the greatest of

1   $250,000, twice the gross gain derived from the offense or

2   twice the gross loss to persons other than you resulting from

3   the offense; and a $100 mandatory special assessment.

4           Do you understand the charge in Count One of the

5   indictment and the penalties that are associated with that

6   charge?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  How do you wish to plead to Count One of

9   the indictment; guilty or not guilty?

10          THE DEFENDANT:  Guilty, your Honor.

11          THE COURT:  My understanding is as part of your plea

12  agreement with the government, you are also admitting the

13  forfeiture allegation with respect to Count One of the

14  indictment.  Is that correct?

15          THE DEFENDANT:  David did -- I'm not sure on how to

16  answer that one, because I know that was negotiated.

17          THE COURT:  I'll read you from the plea agreement,

18  Mr. Finkelstein.  It says, "The defendant hereby admits the

19  forfeiture allegation with respect to Count One of the

20  indictment and agrees to forfeit to the United States, pursuant

21  to federal law, a sum of money equal to the proceeds traceable

22  to the commission of said offense."

23          Is that part of the agreement, to your understanding?

24          THE DEFENDANT:  Yes, yes.  Yes, your Honor.  Now I

25  understand.  Thank you.

M7cWfinP

1          THE COURT:  OK.  And so you are admitting that

2    forfeiture allegation with respect to Count One, is that

3    correct?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Do you further understand that any

6    forfeiture of your assets shall not be treated as satisfaction

7    of any fine, restitution, cost of imprisonment, or any other

8    penalty that the court may impose upon you in addition to

9    forfeiture?

10          Do you understand that?

11          THE DEFENDANT:  I understand that, your Honor.

12          THE COURT:  Do you also understand that the court

13    could order you to pay restitution to any victim?

14          THE DEFENDANT:  Yes.

15          THE COURT:  OK.  Do you also understand that if as

16    part of your sentence you are placed on a term of supervised

17    release and then you violated any of the conditions of that

18    release, you could face an additional term of imprisonment?

19          Do you understand that?

20          THE DEFENDANT:  Understood, your Honor.

21          THE COURT:  All right.

22          Now, you said earlier you were a citizen of the United

23    States.  By law, I must still tell you that if, in fact, you

24    are not a United States citizen, a guilty plea means you may be

25    removed from the United States and denied admission to the

1   United States or citizenship in the future.

2           Do you understand that?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Do you understand that you are bound by

5   your guilty plea regardless of the immigration consequences of

6   your plea and regardless of any advice you have received from

7   your counsel or others regarding those consequences?

8           THE DEFENDANT:  I do, your Honor.

9           THE COURT:  Have you specifically discussed the

10  immigration consequences with Mr. Bertan?

11          THE DEFENDANT:  No.

12          THE COURT:  All right.

13          Mr. Bertan, do you need to discuss this with

14  Mr. Finkelstein?

15          MR. BERTAN:  No, your Honor.  He explained to me that

16  he's a citizen, and I explained to him that that was

17  sufficient.

18          THE COURT:  All right.

19          Ms. Bhaskaran, is there anything further you want me

20  to ask on that particular subject?

21          MS. BHASKARAN:  No, your Honor.

22          THE COURT:  All right.

23          At this time, Mr. Finkelstein, I'm going to explain

24  certain constitutional rights that you have, but these are

25  rights that you'll be giving up as a result of entering a

1    guilty plea here today.

2           First of all, do you understand that you have a right

3    to plead not guilty to the charges in the indictment and a

4    right to a speedy and public jury trial, if you wish?

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  And do you understand that if you were to

7    plead not guilty and go to trial, you'd be presumed innocent

8    and the burden would be on the government to prove your guilt

9    beyond a reasonable doubt?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Do you understand that you're entitled to

12   be represented by an attorney at all stages of the case, at

13   trial, and at every other stage of the proceedings, and if you

14   could not afford to hire or retain an attorney, the court would

15   provide an attorney to you for free?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Do you understand that if there were a

18   trial in your case, you would be entitled to confront and

19   cross-examine any witnesses called by the government to testify

20   against you?

21          THE DEFENDANT:  Yes, I do.

22          THE COURT:  Do you understand you'd be entitled to

23   testify on your own behalf at any trial?

24          THE DEFENDANT:  Yes, I do, your Honor.

25          THE COURT:  Do you understand you could call witnesses

1   and present evidence at the trial?

2              THE DEFENDANT:  I do, your Honor.

3              THE COURT:  Do you also understand that you could ask

4   the court to issue subpoenas to compel witnesses to appear and

5   testify in your defense even if they did not otherwise wish to

6   come to court?

7              THE DEFENDANT:  I do, your Honor.

8              THE COURT:  Do you also understand that if there were

9   a trial, you would not be required to testify against yourself?

10             THE DEFENDANT:  I understand, your Honor.

11             THE COURT:  And do you understand if you chose not to

12  testify, that fact could not be used against you?

13             THE DEFENDANT:  I understand, your Honor.

14             THE COURT:  Do you also understand that if you went to

15  trial and you were convicted at the trial, you would still have

16  the right to appeal that verdict to a higher court?

17             THE DEFENDANT:  I do understand, your Honor.

18             THE COURT:  Do you understand that by entering a

19  guilty plea here today, you'll be giving up all of the rights

20  I've just reviewed with you, including your right to a trial?

21  You will not be able to withdraw your guilty plea, and the only

22  remaining step in this case will be the sentencing.

23             THE DEFENDANT:  Understood, your Honor.

24             THE COURT:  Do you understand that the decision as to

25  the appropriate sentence in your case will be entirely up to

M7cWfinP

1   the sentencing judge, who in this case is Judge Gardephe, and

2   he will be limited only by what the law requires?

3          THE DEFENDANT:  Understood, your Honor.

4          THE COURT:  Do you understand that even if you're

5   surprised or disappointed by your sentence, you're still going

6   to be bound by your guilty plea?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Knowing everything I've just reviewed with

9   you, do you still wish to plead guilty to Count One of the

10  indictment?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Has any force or any threats of force been

13  used, either directly or indirectly, to influence how you plead

14  today?

15         THE DEFENDANT:  No, sir.

16         THE COURT:  Now, I have before me a letter that is

17  dated July 11 from the government to Mr. Bertan containing the

18  plea agreement.

19         Have you read this letter?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Did you sign it on the last page or

22  authorize your signature to be put on it on the last page?

23         THE DEFENDANT:  Yes, I did, Judge.

24         THE COURT:  Before you signed it, did you discuss it

25  with Mr. Bertan?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Did he explain to you all of its terms and

3     conditions?

4          THE DEFENDANT:  Yes, he did.

5          THE COURT:  Apart from what is contained in this

6     letter, have any promises been made to you in order to get you

7     to plead guilty?

8          THE DEFENDANT:  No, your Honor.

9          THE COURT:  Now, in reviewing the plea agreement, I

10    note that it contains an analysis of how part of our law of

11    sentencing known as the sentencing guidelines may impact on any

12    prison term in your case, and this is now on page 3 of the

13    letter.  Based on that analysis, it actually states a guideline

14    range of 41 to 63 months; and that is, as I understand it from

15    the letter, it says that if the court were to adopt the

16    government's position as to the applicability of certain

17    sentencing guidelines, your guideline, stipulated guideline

18    range would be 51 to 63 months.  And if the court were to adopt

19    your view as to the applicability of certain sentencing

20    guidelines, then the range would be 41 to 51 months.  And so

21    the stipulated guideline range is 41 to 63 months.

22          Do you understand that?

23          THE DEFENDANT:  Yes, Judge, I do.

24          THE COURT:  OK.  Do you understand that Judge Gardephe

25    is not bound by the calculation that's in the letter and that

M7cWfinP

1    he's going to be free to do his own calculation, which may

2    result in a guideline range that is different from the one in

3    the letter?

4              THE DEFENDANT:  Understood, your Honor.

5              THE COURT:  Do you also understand that no matter what

6    sentencing range Judge Gardephe believes is called for by the

7    guidelines, that range is just one of many factors that he will

8    consider in determining your sentence, and he has the

9    discretion to give you a prison sentence below or above the

10   range, anywhere up to the maximum term of imprisonment of 20

11   years that we spoke about a few moments ago?

12             Do you understand --

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Do you understand that?

15             THE DEFENDANT:  Yes, your Honor.  Sorry.

16             THE COURT:  Do you also understand that under the

17   terms of this plea agreement, if Judge Gardephe were to

18   sentence you to a prison term that is 63 months or less, then

19   you are giving up your right to appeal that sentence or to

20   challenge it in any other way, such as through a writ of *habeas*

21   *corpus*?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Do you also understand that the plea

24   agreement says -- and this is on page 4 -- that you cannot

25   appeal any fine that is less than or equal to $200,000, and

1  that you cannot appeal any lawful sentence of supervised

2  release and that you cannot appeal any special assessment that

3  is less than or equal to $100?

4            Do you understand all of that?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  Do you also understand that in the letter,

7  you're giving up your right to complain if the government

8  withheld evidence from your attorney that would have been

9  helpful to you?

10           THE DEFENDANT:  Yes.  OK.  Yes.  Yeah.

11           THE COURT:  This is on page 4, at the bottom, the last

12 paragraph, if you have it in front of you.

13           Do you understand that?

14           THE DEFENDANT:  Page 4, last paragraph.  Two, three,

15 four.  Oh, the *Jencks*.  OK.  Yeah, I understand.

16           THE COURT:  OK.  Now, Mr. Finkelstein, is your plea

17 voluntary?  And what I mean by that, is it made of your own

18 free will?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  Now, before I ask you to -- well, did you,

21 in fact, commit the offense, which is a mail fraud charge, in

22 Count One of the indictment?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  Before I ask you to tell the Court what

25 you did, I'm going to ask the government to summarize the

1  elements of the offense and, if it wishes, to advise the Court

2  what the evidence would have been had there been a trial in

3  your case.

4          Ms. Bhaskaran.

5          MS. BHASKARAN:  Thank you, your Honor.

6          There are three elements of the offense of mail fraud

7  as charged in Count One of the indictment:

8          First, that the defendant knowingly devised a scheme

9  to defraud or to obtain money or property by materially false

10 or fraudulent pretenses, representations or promises;

11         Second, that the defendant acted with the intent to

12 defraud; and

13         Third, that in advancing, furtherer or carrying out

14 the scheme, the defendant used the mail or a private or

15 commercial interstate carrier or caused the mails or a private

16 or commercial interstate carrier to be used.

17         In addition to proving those elements beyond a

18 reasonable doubt, the government would be required to prove

19 venue in the Southern District of New York by a preponderance

20 of the evidence.

21         Your Honor, if this matter were to proceed to trial,

22 the government's evidence would consist of the following, in

23 broad strokes.  It would consist of witness testimony to the

24 effect that the defendant's lawsuits filed under the Americans

25 With Disabilities Act were not authorized and filed without

1   standing to sue.  The proof would also include documents,

2   including emails and court filings, where the defendant made

3   materially false statements concerning his authority to bring

4   the lawsuits.  The government's proof would also consist of

5   documents prepared by the defendant, which included forged

6   signatures of the putative plaintiffs in the lawsuits.  The

7   government's evidence would include financial records, showing

8   the payments that the defendant received as a result of these

9   fraudulent lawsuits as well as records showing the use of

10  private interstate mail carriers, including instances where

11  victims of the defendant's fraud, who were located in

12  Manhattan, used such carriers to send checks to the defendant

13  from Manhattan to Florida.

14          THE COURT:  All right.  Thank you, Ms. Bhaskaran.

15          Mr. Finkelstein, will you please now tell the Court in

16  your own words what you did that makes you guilty of the charge

17  in Count One of the indictment.

18          THE DEFENDANT:  Your Honor, between 2016 and 2019, I

19  filed fraudulent lawsuits under the ADA, Americans With

20  Disabilities Act, in the United States District Court in the

21  Southern District of New York without legal authority.  The

22  lawsuits were fraudulent because the plaintiffs in those

23  lawsuits did not suffer any injury.  The purpose of the

24  lawsuits was to obtain money from the defendants in the form of

25  legal fees and make repairs to the sued facilities.  I used the

M7cWfinP

1    mail and other delivery services, such as FedEx, or caused

2    others to use the mail and delivery services in furtherance of

3    the fraud.

4           THE COURT:  Now, Mr. Finkelstein, I think you may have

5    been reading from a statement, and that's totally appropriate.

6    I'm sure you and Mr. Bertan wanted to make sure the statements

7    were exact and correct, but I need to confirm with you you

8    really did those things that you just told me about.  Is that

9    correct?

10          THE DEFENDANT:  Yes, sir, your Honor.  I did read it.

11   And I spoke about it with David Bertan, and -- yes, I'm

12   confirming what you just said, your Honor.

13          THE COURT:  OK.

14          Ms. Bhaskaran, are there any follow-up questions to

15   the allocution you want the Court to ask?

16          MS. BHASKARAN:  No, your Honor.

17          THE COURT:  Mr. Bertan, are there any follow-up

18   questions that you wish the Court to ask?

19          MR. BERTAN:  No.  Thank you, your Honor.

20          THE COURT:  Let me ask counsel.  Are there any further

21   questions on any subject that we have covered during this

22   proceeding that require any follow-up?

23          Ms. Bhaskaran.

24          MS. BHASKARAN:  No, your Honor.

25          THE COURT:  Mr. Bertan.

1          MR. BERTAN:  No.  Thank you.

2          THE COURT:  Is there any reason why I should not

3     recommend to Judge Gardephe that he accept this plea?

4          Ms. Bhaskaran.

5          MS. BHASKARAN:  No, your Honor.  Thank you.

6          THE COURT:  Mr. Bertan.

7          MR. BERTAN:  No.

8          THE COURT:  I think I should state for the record I

9     understand Judge Gardephe has an advice-of-rights form that was

10    filled out and signed by both Mr. Finkelstein and Mr. Bertan,

11    and we can make that part of the record in the case.  That

12    advice-of-rights form memorializes the various subjects that I

13    believe I covered through my questioning with Mr. Finkelstein

14    to ensure that he understood all of his rights.

15         Is that acceptable to the parties -- that we'll make

16    this part of the record even though I didn't specifically

17    invoke or rely on it here?

18         MS. BHASKARAN:  That works for the government, your

19    Honor.

20         MR. BERTAN:  Works for the defense as well.  Thank

21    you.

22         THE COURT:  All right.  We'll make it part of the

23    record then as well.

24         On the basis of Mr. Finkelstein's responses to my

25    questions and my observations of his demeanor by telephone, I

1  find that he is fully competent to enter an informed plea at

2  this time.  I also conclude that he understands the nature of

3  the charge to which he has pled guilty and the consequences of

4  his plea.  Finally, I am satisfied that his plea is voluntary

5  and that there is a factual basis for it.  Accordingly, I

6  recommend that the proffered plea to Count One of the

7  indictment be accepted.

8          I assume the government will order a copy of the

9  transcript and will submit it to Judge Gardephe together with

10 any additional paperwork so that he may act on this

11 recommendation.

12         Will you do that, Ms. Bhaskaran?

13         MS. BHASKARAN:  I will.  Thank you, your Honor.

14         THE COURT:  Has Judge Gardephe set a sentencing date

15 at this time?

16         MS. BHASKARAN:  He has, for November 15 at 11 a.m.

17         THE COURT:  All right.  The presentence investigation

18 report is hereby ordered.

19         The prosecution case summary for purposes of the

20 presentence report should be delivered to probation 14 days

21 from today.

22         Mr. Bertan, you should make yourself available with

23 Mr. Finkelstein so that Mr. Finkelstein may be interviewed by

24 probation in the next 14 days or as soon thereafter as is

25 convenient to both of you.  OK?

1          MR. BERTAN:  Yes, your Honor.  I'll do that.

2          THE COURT:  All right.

3          Ms. Bhaskaran, is there anything further from the

4     government at this time?

5          MS. BHASKARAN:  No, your Honor.

6          THE COURT:  Mr. Bertan, anything further from the

7     defense at this time?

8          MR. BERTAN:  No.  Thank you, your Honor.

9          THE COURT:  All right.  Thank you all very much.

10          Have a good afternoon, Mr. Finkelstein.

11          Take care, everyone.

12          THE DEFENDANT:  Thank you very much, your Honor.

13     Appreciate it.

14          THE COURT:  All right.  Bye-bye, everyone.

15          (Adjourned)

16

17

18

19

20

21

22

23

24

25