March 29, 2024

Judge Paul G. Gardephe
Southern District of New York
40 Foley Square; Courtroom 705
New York, New York 10007

Re: USA v. Stuart Finkelstein Docket No.
21-Cr-217 (PGG)

Dear Judge Gardephe,

I hope this letter finds you well. Attached please find a hard copy of my motion for sentence reduction under Amendment 821 dated March 29, 2024. I will be representing myself pro se in this matter. In addition to the memorandum of law, I also attach three exhibits, A, B, and C, in support. Attached also please find my consent to appear pro se form.

Thank you very much in advance for your attention to this matter. It is greatly appreciated.

Respectfully, I remain,

Very truly yours,

Stuart H. Finkelstein

SHF/tc
To all via U.S. Mail

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff(s), | |
| -against- | |
| STUART  H. FINKELSTEIN | |
| STUART  H. FINKELSTEIN | |
| Defendant(s). | |

Docket No: __21__ CV __217__ ( PGC )(      )

NOTICE OF PRO SE APPEARANCE

I hereby enter an appearance on my own behalf in this action and request:

(please check one option below)

☑ that all future correspondence be mailed to me at the address below, or

☑ that all future correspondence be e-mailed to me at the e-mail address below. I have
completed the attached Consent to Electronic Service.

I understand that if my address or e-mail address changes, I must immediately notify the Court
and all parties.

Finkelstein, Stuart, H

☐ Plaintiff
☑ Defendant

Name (Last, First, MI)

846 NE 54TH Terrace    Sumterville   Floirida         33521

Address          City                State              Zip Code

352-689-4000          stuarthfinkelstein@gmail.com

Telephone Number            e-mail address

3/29/24          *Stuart H Finkelstein*

Date            Signature

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA                              :

                            Plaintiff,          :   Case No.: 21-Cr-217 (PGG)
                                                :

        - against -                                        :

                                              :
STUART H. FINKELSTEIN                                  :

                                              :

                                Defendant.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MOTION FOR SENTENCE REDUCTION UNDER AMENDMENT 821

Pursuant to Amendment 821, as well as S.D.N.Y. Standing Order M10-468, Defendant Stuart H. Finkelstein moves for a reduction of his sentence, and in support thereof states as follows:

## INTRODUCTION

Stuart H. Finkelstein ("Mr. Finkelstein" or "Defendant"), respectfully moves this Court for a very narrowly tailored reduction in his sentence – from 48 months to 41 months. On November 1, 2023, Amendment 821 to the U.S. Sentencing Guidelines was passed. Amendment 821 was informed by studies of recidivism which showed that offenders with zero criminal history points "have considerably lower recidivism rates" than other offenders, including those with one criminal history point. The Sentencing Commission determined that the "departure and variance rates for zero-point offenders, coupled with its recidivism data" warranted the Amendment. U.S.S.G. App. C, Amendment 821, Reason for Amendment. Mr. Finkelstein requests only that which Amendment 821 is designed to ensure: that first time non-violent offenders receive a second look based on the expressed goals—deterrence, fairness, and rehabilitation- of the U.S. Sentencing Commission.

As outlined by U.S. District Judge Carlton W. Reeves, Chair of the U.S. Sentencing Commission, "these changes to the criminal history rules made by the Commission will increase fairness in sentencing." Indeed, the "decision today is one that brings hope to thousands of currently incarcerated people and their families. Consistent with the sentiment Judge Reeves has expressed, Mr. Finkelstein seeks only to make good on the Commissions' intent. Mr. Finkelstein has been a model prisoner during his incarceration. Mr. Finkelstein continues to attempt to better himself and to make his victims whole. These factors, combined with his lack of criminal history, as well as his advanced age and continually worsening health, give good cause to invoke Amendment 821 and reduce his sentence to 41 months. In support, Mr., Finkelstein states as follows:

## FACTUAL BACKGROUND

### A. *November 12, 2019 through August 3, 2023: Mr. Finkelstein Pleads Guilty and is Sentenced to 48 Months Incarceration Based on An Offense Level of 24*

1.    On November 12, 2019, the Government charged Mr. Finkelstein with multiple counts of fraud stemming from a purported scheme to file fraudulent lawsuits under Title III of the Americans with Disabilities Act. *See* 1:19-mj-10645.

2.    On March 31, 2021, the Government filed an information including the majority of the same charges as the original complaint. *See* U.S. v. Finkelstein, No. 1:21-cr-00217 Dkt. No. 35.

3.    On July 12, 2022, Mr. Finkelstein pleaded guilty to one count of mail fraud. See Dkt. No. 84.

4.    On August 3, 2023, the Court sentenced Mr. Finkelstein to 48 months' imprisonment and 36 months supervised release. In reaching its sentence, the Court found that the guidelines calculations resulted in a total offense level of 24 because Mr. Finkelstein has no

criminal history and therefore has zero criminal history points. *See* Dkt No. 112 Sentencing Hearing Transcript ("Hr. Tr.") 23:11-17.

5.      An "Offense level 24, criminal history category I results in a guidelines range of 51 to 63 months' imprisonment." *Id.*

6.      On November 3, 2023, Mr. Finkelstein self-surrendered to the FCC Coleman Camp (the "Camp") in Coleman, Florida to begin his term of imprisonment.

### B. *November 3, 2023 through Present Day: Mr. Finkelstein Surrenders and is a Model Citizen at the Camp, Notwithstanding his Rapidly Deteriorating Health*

7.      Thus far during his incarceration, Mr. Finkelstein has an exemplary record of good conduct, strong initiative, proactive self-improvement, and genuine efforts to participate in prison life and help his fellow inmates. Mr. Finkelstein attaches as exhibits ("Ex.") hereto a sampling of documents from the Camp that demonstrate his positive record thus far into his term of incarceration.

8.      First, Mr. Finkelstein has been assigned to work with the inmates in their educational needs and research skills as a Camp Education Worker. *See* Ex. A at 1 ("Individualized Needs Plan").

9.      To that end, Mr. Finkelstein continues to voluntarily (without compensation) teach various educational programs. This includes invaluable preparation with his fellow inmates for their GED exams, as well as various subjects for those interested in real estate, of which he has work substantial experience prior to becoming an attorney. Mr. Finkelstein has also put his previous experiences as a real estate broker and property manager to good use to help his fellow inmates. He has focused on educational areas including real property management and investment, as well as HUD development projects and building/ management of residential and commercial properties. *See generally* Ex. B.

10.     Mr. Finkelstein also has an Exemplary Conduct Record. Mr. Finkelstein has not incurred any disciplinary record while he has been incarcerated. *See* Ex. A at 1 ("No Incident Reports Found Within Last 6 Months").

11.     To that end, Mr. Finkelstein's Unit Manager has indicated that she does not expect Mr. Finkelstein to incur any disciplinary infraction during his period of incarceration and that he will be able to take full advantage of the First Step Act. *See e.g.*, Ex. A at 3 (illustrating that Mr. Finkelstein has no discipline data to report); Ex. A at 4 (calculating release date assuming First Step Act credits, which are only available to those inmates who do not incur disciplinary infractions under 18 U.S.C. § 3624).

12.     Mr. Finkelstein has also been and is attending various educational and cognitive programs offered at the Camp. Mr. Finkelstein has enrolled in these programs in order to further his efforts to rehabilitative himself and utilize his time productively for himself, his family, and society. Mr. Finkelstein is currently enrolled in 1) Criminal Thinking, 2) the Drug Education Program, and 3) Anger Management. *See* Ex. B at 1.

13.     Moreover, Mr. Finkelstein has signed up for and is waitlisted for the following programs: 1) Phase One, 2) Inside Out Dad, 3) Basic Cognitive Skills, 4) Financial Literacy, and 5) the National Parenting Programs, all which are expected to begin during March 2024. *See* Ex. B at 3.

14.     In addition, Mr. Finkelstein has completed the re-entry program mandated by the Camp. *See* Ex. A at 1.

15.     As noted in prior submissions to the Court, Mr. Finkelstein is in poor health. Mr. Finkelstein suffers from multiple medical conditions and needs multiple surgeries. *See* Medical

documents submitted to the Court on July 31, 2023, in support of Mr. Finkelstein's sentencing memorandum at Dkt. No. 98.

16.  As this Court knows, Mr. Finkelstein recently had extensive shoulder surgery to repair damage caused by a car accident that occurred in October 2022. As a direct result of that accident, Mr. Finkelstein sustained multiple disc herniations in his lumbar and thoracic spine; a displaced left kneecap, along with a meniscus tear; and a full thickness tear of the shoulder tendon.

17.  While the shoulder has been repaired, it has suffered continuous disruptions and displacements since the time Mr. Finkelstein began his term of confinement. Mr. Finkelstein still needs further surgeries to repair herniated lumbar and thoracic discs; he requires surgery on his left knee; and he needs dental surgery to replace teeth broken in the accident. *See* Dkt. No. 98 at 17.

18.  Mr. Finkelstein's incarceration has greatly exacerbated his pre-existing injuries. *See* Ex. C (Medicals from Camp). His medication list now includes Amlodipine, Empagliflozin, Hydrochlorothiazide, Losartan Potassium, Metformin HCl, Prednisolone Acetate (arthritis and pain), Rosuvastatin Calcium 40 mg, Sertraline HCl, and Carboxymeth/glycerin. *See* Ex. C.

19.  Further, Mr. Finkelstein has been unable to procure proper medical treatment for his other medical issues, least of which is his eye conditions. He has high pressure in his eyes which will lead to glaucoma if not properly monitored and treated. The unlicensed doctors at the Camp are unable to properly treat him.

20.  In addition, the prison, contrary to representations previously made to your Honor in the Government's sentencing submission (*see* Dkt. No. 102 at 12, the Camp does not have the personnel and the equipment to properly help Mr. Finkelstein heal and rehabilitate.

21.    Mr. Finkelstein's shoulder has already begun to deteriorate given the lack of proper care. Upon the initiation of either home confinement or release from custody, Mr. Finkelstein would further surgically treat his aliments upon release and at the same time attend to his wife's medical and emotional needs. *See* Ex. C; Dkt. No. 98 at 17, 26; Evelyn Finkelstein letter submitted to the Court July 2023 in support of Mr. Finkelstein's Sentencing Submission.

22.    Mr. Finkelstein is blessed to have the love and support from his two daughters, his son, and his wife to whom he has been married to over 30 years. He will have their support sand will live with his wife Evelyn upon his release. He will need to attend to her ongoing serious health issues which have been getting some assistance from our children as best they can, as two of whom live out of state.

23.    Mr. Finkelstein has made all payments he is able to and is required to under the restitution order from the Court. Mr. Finkelstein endeavors to continue to develop skills and knowledge that he can put to use in order to make money both for his family, and to continue to attempt to make his victims and the Government financially whole.

24.    To that end, Mr. Finkelstein has also endeavored to create his own Re-Entry Plan in order to work on preparing himself and his family for his return to society. Mr. Finkelstein has set forth the ways in which he will continue to work to make his victims whole, including how he will work toward adhering his financial obligations set forth by the Court. *See* Ex. D. He has also begun to take steps about how he can once again be a productive member of society, including earning income and paying back his victims, even as he advances into his 70s.

25.    Mr. Finkelstein's projected release date is currently set for February17, 2027. *See* https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last accessed March 18, 2024).

## AMENDMENT 821

On November 1, 2023, Amendment 821 to the United States Sentencing Guidelines, related to criminal history, went into effect. Part A of the amendment addresses status points, decreasing them by one point for individuals with seven or more criminal history points and eliminating status points for those with six or fewer criminal history points. Subpart 1 of Part B creates a new § 4C1.1 guideline that provides a decrease of two offense levels for "Zero-Point Offenders" (those with no criminal history points) whose offense did not involve specified aggravating factors. Amendment 821 is retroactive, but a court may not order the release of a defendant prior to February 1, 2024. *See* Amendment 825 to USSG § 1B1.10, effective November 1, 2023.

## ARGUMENT

### A. Amendment 821 is Retroactive and Applies Here Because Defendant is a Zero-Point Offender and None of the Aggravating Factors Apply to Him

Under 18 U.S.C. § 3582(c)(2), "a federal court may reduce a defendant's sentence if the defendant was originally sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission when that modification is made retroactive." *United States v. Elendu*, No. 20 CR 179-14 (PLC), 2024 WL 458643 at *2 (S.D.N.Y. Feb. 6, 2024) (citing *United States v. Martin*, 974 F.3d 124, 136, 139 (2d Cir. 2020)). To do so, the court must first "determine the amended guideline range that would have been applicable to the defendant if [the amendment] had been in effect at the time the defendant was sentenced." *United States v. Zapatero*, 961 F.3d 123, 127 (2d Cir. 2020) (quoting U.S.S.G. § 1B1.1Q(b)(1)). Next, the Court must determine whether a sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission. *See* U.S.S.G. § 1B1.10(a)(1) (where the "guideline range applicable" to the defendant "has subsequently been

lowered as a result of an amendment to the Guidelines Manual . . . the court may reduce the defendant's term of imprisonment).

If the defendant is eligible for a sentence reduction, "a court may reduce the term of imprisonment after considering the factors set forth in section 3553(a) and if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission, which are contained in U.S.S.G. § 1B1.10." *Elendu*, 2024 WL 458643, at *2 (quoting *Martin*, 974 F.3d at 136). The Court is limited to a reduction to the bottom of the amended guideline range, after calculating the range that would have applied had the guideline amendment been in effect when the defendant was sentenced. *Id.* § 1B1.10(b)(2).

There are certain disqualifying factors that will prevent a defendant from taking advantage of Amendment 821. *See United States v. Williams*, 2024 WL 561119 at *1 (W.D. N.C. Feb. 12, 2024). "A defendant is not eligible for this reduction if:

1) she received a terrorism adjustment under U.S.S.G. § 3A1.4;
2) she used violence or credible threats of violence in connection with her offense;
3) the offense resulted in death or serious bodily injury;
4) the offense was a sex offense;
5) she personally caused substantial financial hardship;
6) she possessed, received, purchased, transported, transferred, sold, or otherwise disposed of a firearm or other dangerous weapon in connection with the offense;
7) the offense was an offense involving individual rights covered by U.S.S.G. 2H1.1;
8) she received a hate-crime-motivation or vulnerable-victim adjustment, U.S.S.G. § 3A1.1;
9) she was convicted of a serious-human-rights offense, U.S.S.G. § 3A1.5;
10) she received an aggravating-role adjustment, U.S.S.G. § 3B1.1; or
11) she was engaged in a continuing criminal enterprise as defined in 18 U.S.C. § 848

*Williams*, 2024 WL 561119 at *1.

Here, Mr. Finkelstein is eligible for a two-level reduction of his sentence. At sentencing, the Court noted that "[the guidelines] calculations result in a total offense level of 24. As to criminal history, Mr. Finkelstein has none; therefore, he has zero criminal history points." Hr. Tr. 23:13-15." Under Amendment 821 with zero criminal history points, Mr. Finkelstein is eligible

for the adjustment for zero-point offenders so long as he meets all the criteria set forth above.
See *United States v. Zuluaga*, 2023 WL 8371819 at *1 (S.D. Fla. Dec. 4, 2023) ("Since Zuluaga
was sentenced, the United States Sentencing Commission issued a sentencing adjustment for
certain zero-point offenders, which provides, in relevant part, for "a decrease of two levels from
the offense level ... for offenders who did not receive any criminal history points ... and whose
instant offense did not involve specified aggravating factors."). None of the eleven specified
aggravating factors applies to Mr. Finkelstein. Mr. Finkelstein is therefore eligible for a sentence
reduction under Amendment 821.

### B. The Court Should Exercise its Discretion and Resentence Mr. Finkelstein to 41 Months Imprisonment

    1. <u>Under Amendment 821, the Guidelines Range at Sentencing Would Have Been 41-51 Months Rather than 51-63 Months</u>

At sentencing, there was debate whether Defendant's sentencing guidelines range was
41-51 months, or whether it was 51-63 months. Had Amendment 821 been in effect at the time
of sentencing, the debate would have been whether the guidelines range was 27-41 months or 41-
51 months. This, in turn, would have affected the overarching analysis regarding the most
appropriate sentence for Mr. Finkelstein.

Section 1B1.10(a)(2)(B) of the Guidelines provides that "[a] reduction in the defendant's
term of imprisonment.... is not authorized under 18 U.S.C. § 3582(c)(2) if .... [the amendment]
does not have the effect of lowering the defendant's applicable guideline range. *See U.S. v.
Torres*, 2024 WL 621554 (S.D.N.Y. Feb. 16, 2024) ("Accordingly, the guideline range that was
applicable to Torres at the time of sentencing is the same guideline range that is in effect now.").
However, if the defendant's offense level and guidelines range is reduced by a recalculation
under Amendment 821, then the Court may grant a motion for resentencing in its discretion

under 3553(a). *See United States v. Kabbaj*, 2024 WL 639330 (S.D.N.Y. Feb 15, 2024)

(reducing 52 month sentence to 46 months even where Court could have not reduced or just

reduced to 51 months, because analysis of 3553(a) factors weighed in favor of reasonable

reduction given spirt and purpose of Amendment 821). This is because where "an amendment

applies retroactively, the Act authorizes district courts to reduce the sentences of prisoners who

were sentenced based on a Guidelines range that <u>would have been lower</u> had the amendment

been in place when they were sentenced." *United States v. Medrano*, 2021 WL 1856676 at *1

(S.D.N.Y. May 10, 2021) (emphasis added).

      Under Amendment 821, a proportional sentence decrease is appropriate such that if a

defendant was originally sentenced to the bottom of the pre-Amendment 821 guidelines, the

post-Amendment 821 sentence may similarly fall at the bottom of the new guidelines range. *See*

*UNITED STATES OF AMERICA, Plaintiff, v. DAQUANE EDWARD WILSON, Defendant.*, 2024

WL 865847 (W.D. Mich. Feb. 29, 2024) ("Defendant was previously sentenced to 87 months, at

the bottom of the guideline range, and thus, an appropriate reduced sentence would be 70

months, at the bottom of the amended guideline range."). Further, even if the defendant's

original sentence falls within the new guidelines range, the Court may still issue a proportional

decrease in the sentence if supported by the 3553(a) factors. *See e.g.*, *United States v. Ali*, 2024

WL 515244 (S.D.N.Y. Feb. 9, 2024) (granting motion to reduce 46 month sentence to 42 months

under Amendment 821 where original guidelines range of 46–57 months was thereafter reduced

to guidelines range of 37–46 months, even though court would have been within its right to

maintain the original sentence which was within the amended guidelines range); *United States v.*

*Mercado-Castillo*, 2024 WL 1174500 (S.D. Fla. Mar. 19, 2024) (granting motion to reduce 70

month sentence to 57 months under Amendment 821 where original guidelines range of 70-87

months was thereafter reduced to guidelines range of 57-70 months, even though court would have been within its right to maintain the original sentence which was within the amended guidelines range).

*Kabbaj* is instructive. In *Kabbaj*, the defendant, Kabbaj, pled guilty to one count of wire fraud. *Kabbaj*, 2024 WL 639330 at *1. The sentencing guidelines range was 51-63 months' incarceration, based on an offense level of 24 and a criminal history category of I. After analyzing the 3553(a) factors, Judge Berman sentenced Kabbaj to a near-bottom of the guidelines sentence: 52 months. *Id.* In analyzing Kabbaj's motion to reduce, the Court explained that because Kabbaj had zero criminal history points and his offense did not include any of the aggravating factors, the new guidelines range "becomes 41-51 months, based upon an amended offense level of 22 and a criminal history category of I." *Id.* The Court reduced Kabbaj's sentence from 52 to 46 months. *Id.* at 2. Even though Kabbaj's multi-million dollar crime was "breathtaking," the Court did not end its analysis there. The Court took care to analyze Kabbaj's conduct while incarcerated:

> "The Court also notes that, following his incarceration, Mr. Kabbaj appears to have made "the best use of his time in custody," having "completed more than 36 programs" and spending time "teaching and tutoring" others. The head of education at FCI Fort Dix described him as "a positive influence." *Id.* (Citations omitted).

The Court concluded by noting that: The §3553(a) factors clearly support a 46 month term of incarceration upon resentencing. *Id*

Here, at sentencing, there was debate whether Defendant's sentencing guidelines range was 41-51 months, or whether it was 51-63 months. *See* ECF No. 102 ("Gov Submission) ("the Government calculated the defendant's Guideline Range to be 51 to 63 months' imprisonment, and the defendant calculated his Guidelines Range to be 41 to 51 months' imprisonment. The parties accordingly stipulated to a Guidelines Range (the "Stipulated Guidelines Range") of 41 to

63 months' imprisonment."). The debate centered around the monetary loss amount. In essence, in the Government's view, the loss amount was between $1.5 and 3.5 million, whereas in Defendant's view; the loss amount was between $500,000 and $1.5 million. The Court analyzed the monetary loss and found that the loss amount was over $1.5 million. The Court explained:

> "That results in criminal history category I. Offense level 24, criminal history category I results in a guidelines range of 51 to 63 months' imprisonment." Dkt. No. 112 Sentencing Hearing Transcript ("Hr. Tr.") 23:11-17. Based on my independent evaluation of the sentencing guidelines, I find the total offense level is 24, the criminal history category is I, and the recommended sentencing range under the sentencing guidelines is 51 to 63 months' imprisonment." Hr. Tr. 24:1-5."

This is important because had Amendment 821 been in effect during sentencing, the parameters of the dispute would have been two offense levels lower. In other words, the disputed guidelines range at Sentencing would have been between 27-41 Months and 41-51 Months, rather than between 41-51 Months and 51-63 Months. Accordingly, even assuming the Court still found a loss amount above $1.5 million, the offense level would have been two levels lower than what it was on August 3, 2023, (22 instead of 24) and the guidelines range would have been over ten months lower (41-51 months rather than 51-63 months).[1] *See Medrano*, 2021 WL 1856676 at *2 ("had Amendment 782 been in effect at the time of Mr. Medrano's sentencing, his total offense level would have been 38, and the sentencing guidelines range for his sentence would have been 235 to 293 months, instead of 292 to 365 months, of imprisonment. The Court may therefore reduce Mr. Medrano's sentence to any length between 235 and 261 months, after considering the section 3553(a) factors, if it finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.").

---

[1] It must also be noted that the Court's finding that that it would have "imposed the same sentence, even if [it] adopted the $950,000 loss amount and the 14 level increase that the defendant argued was appropriate" (Hr. Tr. 55:3-6), the analysis herein would remain the same, as the baseline sentencing guidelines range would have been two levels lower.

Next, the Court granted Defendant "modest variance from the guidelines" due to his age and medical condition—a three-month variance—resulting in a sentence of 48 months incarceration. *See* Hr. Tr. 51:16-21. As the above analysis makes clear, if Mr. Finkelstein were sentenced today, as opposed to seven months ago, the "guidelines range" that the Court references would be 41-51 months now, rather than 51-63 months like it was seven months ago. Crucially, a proportional "modest variance" from the amended range of 41-51 months would likely result in a sentence between 35-40 months. As will be more fully set forth below in section C, Mr. Finkelstein's health has declined significantly since he began his term of incarceration. The case for a modest variance is even stronger than it was at the original sentencing.

The foregoing notwithstanding, Mr. Finkelstein is aware that despite Amendment 821's force, the Court cannot as a matter of law impose any new sentence below the Amended guidelines range. *United States v. Ruiz-Patozano*, 2024 WL 621661at *1 (S.D.N.Y. Feb. 13, 2024) ("Because the Court sentenced the defendant principally to a sentence of 86 months' imprisonment, which is below the bottom of the adjusted Guideline Sentencing Range, the defendant does not qualify for a reduction in his sentence."). As such, Mr. Finkelstein does not request that the Court resentence him to any amount of incarceration below 41 months. He simply requests that the Court, when taking into consideration both the purpose of Amendment 821 and the 3553(a) factors (analyzed below), exercises its discretion to resentence him to the bottom of the amended guidelines range, just as it sentenced him to the bottom of his original guidelines range with a slight variance.

## C. Under the 3553(a) Factors, the Court Should Resentence Defendant to 41 Months Imprisonment

The Court must "impose a sentence sufficient, but not greater than necessary," to comply with the statutory purposes of sentencing. 18 U.S.C. § 3553(a). As the Supreme Court has recognized, "the principle" underlying sentencing is that "'the punishment should fit the offender

13

and not merely the crime.'" *Pepper v. United States*, 562 U.S. 476, 487–88 (2011) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)); *see also United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006), *aff'd*, 301 F. App'x 93 (2d Cir. 2008) (defendant should receive credit for good deeds "not performed to gain status or enhance his image"). Therefore, in rendering "an individualized assessment based on the facts presented," the Court must consider the seven factors identified in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 50 (2007).

The § 3553(a) factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the applicable sentencing guidelines range; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

First and foremost, Mr. Finkelstein is well aware that his misconduct was serious and worthy of punishment. He continues to adhere to his financial obligations in order to make his victims as whole as possible, even at this juncture where he does not have any sustainable income. Further, as noted above, while in custody, Mr. Finkelstein has maintained clear conduct, has begun to undertake the important role as education worker and teacher, has completed or in the process of completing at least five other educational classes, and is enrolled in rehabilitative, financial, & anger management treatment. Mr. Finkelstein has incurred no disciplinary sanctions

14

while in custody. He continues to work on himself and toward paying his victims back. Indeed, a slight lowering of his sentence will bring him that much closer to actually being able to attempt to pay his victims back.

Mr. Finkelstein has performed well in prison, avoiding any disciplinary citations and making the best use of his time. *See* Ex. A. Although he has completed only a modest number of educational courses, his continued application to the wait list of multiple courses, along with his productive use of his prior education in order to best help his fellow inmates, weigh in his favor. *See United States v. Norris*, 2024 WL 385006 at *2 (W.D. N.C. Jan 31, 2024) (granting motion to reduce under Amendment 821 from 27 months to time served where the "[d]efendant's offense conduct was serious but non-violent. And considering the sentencing objectives described in 18 U.S.C. § 3553(a), the Court finds that those factors, including Defendant's lack of significant criminal history, good performance in prison, and the non-violent nature of his offense conduct, weigh in favor of a sentence reduction.").

Finally, Mr. Finkelstein is in advanced age and poor health. Mr. Finkelstein will turn seventy (70) years of age this calendar year. And as noted, *supra*, the BOP is not meeting Mr. Finkelstein's medical needs. His body continues to deteriorate, and the speed of the deterioration will only increase over time. In light of the spirit, findings, and goals of Amendment 821, these factors weigh in favor of a modest sentence reduction. *See United States v. Sosa*, 2023 WL 9002764 at *4 (D. Utah Dec. 28, 2023) (granting motion for reduction based on defendant's age (72), which provided low risk of recidivism, and also taking into account the need for the

sentence to provide the defendant with needed medical care in the most effective manner where the defendant's many serious medical conditions were not being met by the BOP and where the defendant's family members are willing and able to aid in the defendant's medical treatment).

WHEREFORE, Mr. Finkelstein respectfully requests that the Court resentence him to 41 months' imprisonment under Amendment 821. In the alternative, Mr. Finkelstein respectfully requests that the Court resentence him to a term of imprisonment lower than 48 Months.

Respectfully submitted,
Stuart H. Finkelstein

Stuart H. Finkelstein
#25851-104
FCC Coleman Low camp
Coleman, Florida 33521

## <u>CERTIFICATE OF SERVICE</u>

Under penalties of perjury, I declare that I have mailed (and emailed) a copy of the foregoing Motion upon the Clerk of the Court of the Southern District of New York to forward on my behalf to all interested parties on the 29th day of March, 2024.

By: Stuart H. Finkelstein
<u>/S/ Stuart H. Finkelstein</u>



# Individualized Needs Plan - Initial Classification   (Inmate Copy)

SEQUENCE: 02344283
Team Date: 11-25-2023

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: FINKELSTEIN, STUART  25851-104

| | | | |
|---|---|---|---|
| Facility: | COL COLEMAN LOW FCI | Proj. Rel. Date: | 03-29-2027 |
| Name: | FINKELSTEIN, STUART | Proj. Rel. Mthd: | GOOD CONDUCT TIME |
| Register No.: | 25851-104 | DNA Status: | COL07088 / 11-03-2023 |
| Age: | 69 | | |
| Date of Birth: | 09-09-1954 | | |

## Detainers

| Detaining Agency | Remarks |
|---|---|

*NO DETAINER*

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| COL | C ED WORK | CAMP EDUCATION WORKER | 11-19-2023 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| COL | ESL HAS | ENGLISH PROFICIENT | 11-17-2023 |
| COL | GED HAS | COMPLETED GED OR HS DIPLOMA | 11-17-2023 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| COL SCP | C | RE-ENTRY | 11-16-2023 | 11-16-2023 |

## Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|

*** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ***

## Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1-MH | CARE1-MENTAL HEALTH | 11-03-2023 |
| CARE2 | STABLE, CHRONIC CARE | 11-08-2023 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| REG DUTY | NO MEDICAL RESTR–REGULAR DUTY | 11-08-2023 |
| YES F/S | CLEARED FOR FOOD SERVICE | 11-08-2023 |

## Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| ED NONE | DRUG EDUCATION NONE | 11-10-2023 |
| ED WAIT V | DRUG EDUCATION WAIT-VOLUNTEER | 11-21-2023 |
| NR WAIT | NRES DRUG TMT WAITING | 11-21-2023 |

## FRP Payment Plan

| Most Recent Payment Plan |
|---|

| FRP Assignment: | PART | FINANC RESP-PARTICIPATES | Start: 11-30-2023 |
|---|---|---|---|
| Inmate Decision: | AGREED | $25.00 | Frequency: MONTHLY |
| Payments past 6 months: | $0.00 | | Obligation Balance: $200,100.00 |

### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | $100.00 | IMMEDIATE | AGREED |
| | | *** NO ADJUSTMENTS MADE IN LAST 6 MONTHS *** | | | |
| 2 | REST FV | $200,000.00 | $200,000.00 | IMMEDIATE | AGREED |
| | | *** NO ADJUSTMENTS MADE IN LAST 6 MONTHS *** | | | |

## FRP Deposits





**Individualized Needs Plan - Initial Classification    (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: FINKELSTEIN, STUART  25851-104

SEQUENCE: 02344283
Team Date: 11-25-2023

Trust Fund Deposits - Past 6 months:   $400.00          Payments commensurate ?   Y

New Payment Plan:    ** No data **

## Current FSA Assignments

| Assignment | Description | Start |
|---|---|---|
| FTC ELIG | FTC-ELIGIBLE - REVIEWED | 11-25-2023 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 11-09-2023 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 11-09-2023 |
| N-COGNTV N | NEED - COGNITIONS NO | 11-09-2023 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 11-07-2023 |
| N-FIN PV N | NEED - FINANCE/POVERTY NO | 11-10-2023 |
| N-FM/PAR N | NEED - FAMILY/PARENTING NO | 11-09-2023 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 11-04-2023 |
| N-MEDICL Y | NEED - MEDICAL YES | 11-06-2023 |
| N-RLF Y | NEED - REC/LEISURE/FITNESS YES | 11-06-2023 |
| N-WORK N | NEED - WORK NO | 11-17-2023 |
| R-MIN | MINIMUM RISK RECIDIVISM LEVEL | 12-01-2023 |

## Progress since last review

Initial Classification. Inmate Finkelstein arrived at Coleman-Camp on 11-03-2023. He was encouraged to satisfy his court ordered financial obligations through participation in the Inmate Financial Responsibility Program and maintain clear conduct. While at Coleman-Camp it is recommended that he participate in re-entry and educational programs. Inmate is currently on the waiting list for four classes that he enrolled in.

## Next Program Review Goals

By next review, it recommended that he enroll in two classes in recreation.

## Long Term Goals

By November 2024, it is recommended that he complete two recraetion classes and obtain copies of his Photo ID, Birth Certificate, and Social Security Card.

## RRC/HC Placement

No.
Management decision - PRD: 03-29-2027; Will be reviewed at 17-19 months from release..

## Comments

407/408 reviewed and current.
While at Coleman it is imperative to maintain strong communication with family and friends through visitation, phone calls and mail.
Maintain personal hygiene and room sanitation daily thru next review.
Continue to participate in the Inmate Financial Responsibility Program.
RRC recommendation will be discussed when 17-19 months from release. Will be reviewed for RRC placement under 2nd Chance Act.

A3

```
   COLBO        *        INMATE DISCIPLINE DATA        *     03-06-2024
PAGE 001 OF 001 *    CHRONOLOGICAL DISCIPLINARY RECORD    *     14:35:57

REGISTER NO: 25851-104 NAME..: FINKELSTEIN, STUART
FUNCTION...: PRT        FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 03-06-2024
```

```
G5401        DISCIPLINE DATA DOES NOT EXIST FOR THIS INMATE
```

A4

```
  COLBO   540*23 *              SENTENCE MONITORING          *    03-06-2024
PAGE 001          *             COMPUTATION DATA             *    14:33:55
                                AS OF 03-06-2024
```

REGNO..: 25851-104 NAME: FINKELSTEIN, STUART


```
FBI NO...........: TDJ99PPAJ       DATE OF BIRTH: 09-09-1954  AGE:  69
ARS1.............: COL/A-DES
UNIT.............: 4 SCP            QUARTERS.....: F14-415L
DETAINERS........: NO              NOTIFICATIONS: NO
```

FSA ELIGIBILITY STATUS IS: ELIGIBLE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

HOME DETENTION ELIGIBILITY DATE....: 10-05-2026

FINAL STATUTORY RELEASE FOR INMATE.: 03-29-2027 VIA GCT REL
        WITH APPLIED FSA CREDITS.:  30  DAYS
THE INMATE IS PROJECTED FOR RELEASE: 02-27-2027 VIA FSA REL


--------------------CURRENT JUDGMENT/WARRANT NO: 010 --------------------

```
COURT OF JURISDICTION...........: NEW YORK, SOUTHERN DISTRICT
DOCKET NUMBER...................: 1:21CR00217-001(PGG)
JUDGE...........................: GARDEPHE
DATE SENTENCED/PROBATION IMPOSED: 08-03-2023
DATE COMMITTED..................: 11-03-2023
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
```

```
                 FELONY ASSESS  MISDMNR ASSESS   FINES        COSTS
NON-COMMITTED.:  $100.00        $00.00          $200,000.00  $00.00

RESTITUTION...:   PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00
```

-----------------------CURRENT OBLIGATION NO: 010 ------------------------
OFFENSE CODE....:  150      FRAUD POSTAL
OFF/CHG: 18:1341 MAIL FRAUD

```
  SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:   4 YEARS
  TERM OF SUPERVISION............:   3 YEARS
  DATE OF OFFENSE................: 11-19-2019
```


G0002      MORE PAGES TO FOLLOW . . .

Ex. B

```
  COLBO  531.01 *              INMATE HISTORY            *    03-06-2024
PAGE 001 OF 001 *                PT OTHER               *    14:35:21

 REG NO..: 25851-104 NAME....: FINKELSTEIN, STUART
 CATEGORY: PTO        FUNCTION: PRT         FORMAT:

FCL    ASSIGNMENT DESCRIPTION                START DATE/TIME STOP  DATE/TIME
COL    ANG M WAIT ANGER MANAGEMENT CBT WAIT  11-24-2023 1532 CURRENT
COL    CR TH WAIT CRIMINAL THINKING WAIT     11-24-2023 1532 CURRENT
COL    TALK DOC C TALKING WITH YOUR DOCTOR COMP 12-05-2023 1435 12-05-2023 1435
COL    TALK DOC P TALKING WITH YOUR DOCTOR PART 11-08-2023 1534 12-05-2023 1435




 G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

*B2*

```
   COLBO  531.01 *            INMATE HISTORY         *      03-06-2024
PAGE 001 OF 001 *                WASPB              *      14:35:37

 REG NO..: 25851-104 NAME....: FINKELSTEIN, STUART
 CATEGORY: WSP        FUNCTION: PRT         FORMAT:

FCL    ASSIGNMENT DESCRIPTION                START DATE/TIME STOP  DATE/TIME
COL    GR BCSW    GR BASIC COGNITIVE SKILLS WAIT 11-24-2023 1532 CURRENT
COL    PAR IODW   INSIDE OUT DAD WAITING        02-01-2024 2011 CURRENT
COL    PAR NATLW  NATIONAL PARENTING PGM WAIT   02-01-2024 2015 CURRENT
COL    PAR ONEW   PHASE ONE WAIT                02-01-2024 2013 CURRENT




G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

*B3*

```
   COLDY  531.01 *           INMATE HISTORY            *      02-06-2024
PAGE 001 OF 001 *               WASPB                 *      14:15:16

REG NO..: 25851-104 NAME....: FINKELSTEIN, STUART
CATEGORY: WSP        FUNCTION: PRT        FORMAT:

FCL    ASSIGNMENT DESCRIPTION                START DATE/TIME STOP  DATE/TIME
COL    GR BCSW    GR BASIC COGNITIVE SKILLS WAIT 11-24-2023 1532 CURRENT
COL    PAR IODW   INSIDE OUT DAD WAITING         02-01-2024 2011 CURRENT
COL    PAR NATLW  NATIONAL PARENTING PGM WAIT    02-01-2024 2015 CURRENT
COL    PAR ONEW   PHASE ONE WAIT                 02-01-2024 2013 CURRENT




G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

Ex. C.

# Bureau of Prisons
# Health Services
# Medication Summary
# Historical

| | | |
|---|---|---|
| Complex: COX--COLEMAN FCC | Begin Date: 11/04/2023 | End Date: 03/05/2024 |
| Inmate: FINKELSTEIN, STUART | Reg #: 25851-104 | Quarter: F14-415L |

**Medications listed reflect prescribed medications from the begin date to end date on this report.**

**Allergies:**                               Denied

## Active Prescriptions

amLODIPine  5 MG TAB
Take one tablet (5 MG) by mouth each morning
**Rx#:** 1180942-COX     **Doctor:** Negron, Ivan (MOUD) MD
**Start:** 11/14/23     **Exp:** 11/13/24     **D/C:** 12/20/23     **Pharmacy Dispensings:** 90 TAB in 112 days

amLODIPine 10 MG TAB
***note increased dose*** Take one tablet (10 MG) by mouth daily
**Rx#:** 1187320-COX     **Doctor:** Gunther, Sasha (MOUD) ARNP
**Start:** 12/20/23     **Exp:** 03/19/24     **Pharmacy Dispensings:** 90 TAB in 76 days

Empagliflozin 10 MG Tablet
Take one tablet (10 MG) by mouth daily **non-formulary approved until: 12/8/23
**Rx#:** 1180163-COX     **Doctor:** Ligonde Merisio, Michelle (MOUD) MD
**Start:** 11/09/23     **Exp:** 12/08/23     **D/C:** 11/14/23     **Pharmacy Dispensings:** 30 TAB in 29 days

Empagliflozin 10 MG Tablet
Take one tablet (10 MG) by mouth daily **non-formulary approved until: 12/8/23
**Rx#:** 1180944-COX     **Doctor:** Negron, Ivan (MOUD) MD
**Start:** 11/14/23     **Exp:** 12/08/23     **Pharmacy Dispensings:** 0 TAB in 24 days

Empagliflozin 10 MG Tablet
Take one tablet (10 MG) by mouth daily **non-formulary approved until: 12/8/23
**Rx#:** 1200572-COX     **Doctor:** Etkins, Venetia (MOUD) ARNP
**Start:** 03/04/24     **Exp:** 03/04/25     **Pharmacy Dispensings:** 30 TAB in 1 day

hydroCHLOROthiazide 25 MG Tab
Take one tablet (25 MG) by mouth each morning
**Rx#:** 1179855-COX     **Doctor:** Ligonde Merisio, Michelle (MOUD) MD
**Start:** 11/07/23     **Exp:** 12/07/23     **D/C:** 11/14/23     **Pharmacy Dispensings:** 30 TAB in 30 days

hydroCHLOROthiazide 25 MG Tab
Take one tablet (25 MG) by mouth each morning
**Rx#:** 1180945-COX     **Doctor:** Negron, Ivan (MOUD) MD
**Start:** 11/14/23     **Exp:** 11/13/24     **Pharmacy Dispensings:** 180 TAB in 112 days

| Complex: | COX--COLEMAN FCC | Begin Date: | 11/04/2023 | End Date: | 03/05/2024 |
|---|---|---|---|---|---|
| Inmate: | FINKELSTEIN, STUART | Reg #: | 25851-104 | Quarter: | F14-415L |

## Active Prescriptions

Losartan potassium 100 MG TAB
Take one tablet (100 MG) by mouth each day ** ***NOTE DOSE and STRENGTH*** **
**Rx#:** 1179854-COX    **Doctor:** Ligonde Merisio, Michelle (MOUD) MD
**Start:** 11/07/23    **Exp:** 12/07/23    **D/C:** 11/14/23    **Pharmacy Dispensings:** 30 TAB in 30 days

Losartan potassium 100 MG TAB
Take one tablet (100 MG) by mouth each day
**Rx#:** 1180946-COX    **Doctor:** Negron, Ivan (MOUD) MD
**Start:** 11/14/23    **Exp:** 11/13/24    **Pharmacy Dispensings:** 180 TAB in 112 days

metFORMIN HCl  500 MG Tab
Take one tablet (500 MG) by mouth twice daily with food for control of diabetes
**Rx#:** 1179831-COX    **Doctor:** Ligonde Merisio, Michelle (MOUD) MD
**Start:** 11/07/23    **Exp:** 12/07/23    **D/C:** 11/14/23    **Pharmacy Dispensings:** 60 TAB in 30 days

metFORMIN HCl 1000 MG Tab
Take one tablet (1000 MG) by mouth twice daily with food for control of diabetes ***NOTE DOSE and STRENGTH***
**Rx#:** 1180951-COX    **Doctor:** Negron, Ivan (MOUD) MD
**Start:** 11/14/23    **Exp:** 11/13/24    **Pharmacy Dispensings:** 360 TAB in 112 days

prednisoLONE Ace. Ophth Susp 1%,  5 ml
Instill one drop in the left eye twice daily for 5 days
**Rx#:** 1183128-COX    **Doctor:** Negron, Ivan (MOUD) MD
**Start:** 11/28/23    **Exp:** 12/03/23    **Pharmacy Dispensings:** 5 ML in 5 days

Rosuvastatin Calcium 40 MG Tab
Take one tablet (40 MG) by mouth each evening for control of cholesterol
**Rx#:** 1179832-COX    **Doctor:** Ligonde Merisio, Michelle (MOUD) MD
**Start:** 11/07/23    **Exp:** 12/07/23    **D/C:** 11/14/23    **Pharmacy Dispensings:** 30 TAB in 30 days

Rosuvastatin Calcium 40 MG Tab
Take one tablet (40 MG) by mouth each evening for control of cholesterol
**Rx#:** 1180953-COX    **Doctor:** Negron, Ivan (MOUD) MD
**Start:** 11/14/23    **Exp:** 11/13/24    **Pharmacy Dispensings:** 180 TAB in 112 days

Sertraline HCl  50 MG Tab
Take three tablets (150 MG) by mouth each day   **NEW INTAKE  CONSENT NEEDED FOR FURTHER REFILLS**
**Rx#:** 1179877-COX    **Doctor:** Ligonde Merisio, Michelle (MOUD) MD
**Start:** 11/08/23    **Exp:** 12/08/23    **D/C:** 11/14/23    **Pharmacy Dispensings:** 90 TAB in 30 days

Sertraline HCl 100 MG Tab
Take one and one-half (1 and 1/2) tablets (150 MG) by mouth daily ***NOTE DOSE and STRENGTH*** *consent form on file *

| Complex: | COX--COLEMAN FCC | Begin Date: | 11/04/2023 | End Date: | 03/05/2024 |
|---|---|---|---|---|---|
| Inmate: | FINKELSTEIN, STUART | Reg #: | 25851-104 | Quarter: | F14-415L |

## Active Prescriptions

**Rx#:** 1180954-COX    **Doctor:** Negron, Ivan (MOUD) MD

**Start:** 11/14/23    **Exp:** 11/13/24    **D/C:** 03/04/24    **Pharmacy Dispensings:** 180 TAB in 112 days

Sertraline HCl 100 MG Tab

Take one and one-half (1 and 1/2) tablets (150 MG) by mouth daily *consent form on file *

**Rx#:** 1200574-COX    **Doctor:** Etkins, Venetia (MOUD) ARNP

**Start:** 03/04/24    **Exp:** 03/04/25    **Pharmacy Dispensings:** 0 TAB in 1 day

## Active OTC

| Medication | OTC Source | Start Date | Stop Date |
|---|---|---|---|
| Carboxymeth/glycerin Optive Ophth Gel 1-0.9 % | Retail Source -Historical Use | 11/03/2023 | |

**Order Details:** INSTILL IN EACH EYE Q4H